**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **GILBERTE JILL KELLEY** *et al.*, |
| **Plaintiffs,** |
| **v.** |
| **THE FEDERAL BUREAU OF INVESTIGATION** *et al.*, |
| **Defendants.** |

Civil Action No. 13-cv-825 (ABJ)

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendants, the Federal Bureau of Investigation, the Department of Defense, the Department of State, and the United States of America respectfully move to dismiss Counts One through Eight and Counts Eleven through Fourteen of plaintiffs' amended complaint, ECF No. 19, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.   Points and authorities in support of defendants' motion are presented in the attached Memorandum in Support.

February 28, 2014

Respectfully Submitted,

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director


 /s/   *Peter J. Phipps*
PETER J. PHIPPS (DC Bar #502904)
Senior Trial Counsel

U.S. Department of Justice, Civil Division
Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov

<u>Mailing Address:</u>
P.O. Box 883 Ben Franklin Station
Washington, DC 20044

<u>Courier Address:</u>
20 Massachusetts Ave., NW
Washington, DC 20001

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GILBERTE JILL KELLEY** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | Civil Action No. 13-cv-825 (ABJ) |
| **THE FEDERAL BUREAU OF INVESTIGATION** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

PETER J. PHIPPS
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov

# TABLE OF CONTENTS

<u>TITLE</u>                                                                                          <u>PAGE</u>

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND....................................................................................................4

STATUTORY AND REGULATORY BACKGROUND.............................................................6

    The Privacy Act of 1974 ................................................................................................6

    The Stored Communications Act ....................................................................................9

ARGUMENT .........................................................................................................................11

I.   Counts Seven, Eight, and Eleven through Fourteen of plaintiffs' amended
     complaint are outside of the Court's jurisdiction and should be dismissed.....................11

    A.  Under the Westfall Act, the United States should be substituted for the
       individual-capacity defendants with regard to plaintiffs' state-law tort claims in
       Counts Eleven through Fourteen ...........................................................................11

       1.  The Westfall Act substitution process .................................................................11

       2.  The individual-capacity defendants should be dismissed from
          the state-law Counts because the United States has certified their actions
          under the Westfall Act .........................................................................................13

    B.  Upon the Westfall Act substitution, plaintiffs are jurisdictionally barred from
       proceeding with their state-law tort claims against the United States .........................13

       1.  Plaintiffs' state-law claims are outside of the Court's
          jurisdiction because plaintiffs have not alleged presenting
          those claims to the relevant federal agencies.......................................................13

       2.  Plaintiffs' state-law claims for defamation and false light
          in Counts Eleven and Twelve are outside of the FTCA's
          waiver of sovereign immunity .............................................................................14

    C.  Plaintiffs' claims under the Stored Communications Act are jurisdictionally
       barred .................................................................................................................16

II.  Plaintiffs do not allege facts necessary for their Privacy Act claims and Counts One
     through Six should be dismissed......................................................................................17

    A.  Plaintiffs' disclosure claim under the Privacy Act fails because the amended
       complaint does not satisfy the retrieval rule ...........................................................17

B.  Plaintiffs fail to state a claim for the unlawful maintenance of records ......................20

C.  Plaintiffs' allegations do not constitute a claim of an adverse determination
based on inaccurate or incomplete records. ................................................................23

    1.  Subsection (e)(5) claims proceed under the civil remedy
provision in subsection (g)(3), and not the catch-all
provision in subsection (g)(4). ................................................................24

    2.  The amended complaint does not state a claim under subsection (e)(5). .............26

        a.  The allegation that the FBI did not provide victims' assistance to
plaintiffs does not state a claim under subsection (e)(5)................................. 26

        b.  The allegation that the FBI converted plaintiffs into subjects of an
investigation does not state a claim under subsection (e)(5) .......................... 28

        c.  The allegation regarding denial of access privileges to MacDill Air
Force Base does not state a claim for relief under subsection (e)(5) ............. 30

D.  Plaintiffs fail to state a claim for maintaining records that describe the exercise
of First Amendment rights because any such records would be covered by the
law enforcement exception ........................................................................................31

    1.  Subsection (e)(7) is limited by the law enforcement
exception ..................................................................................................31

    2.  The law enforcement exception precludes plaintiffs' claim
under subsection (e)(7) ............................................................................32

E.  Plaintiffs do not state a claim for failing to assure accuracy and completeness of
records prior to their alleged dissemination.................................................................34

F.  Plaintiffs do not state a claim for relief against the FBI or DoD for failure to
establish Privacy Act safeguards. ..............................................................................40

CONCLUSION...................................................................................................................45

# TABLE OF AUTHORITIES

**Federal Cases**

*Albright v. United States,*
   631 F.2d 915 (D.C. Cir. 1980) ............................................................................................. 31

*Albright v. United States,*
   732 F.2d 181 (D.C. Cir. 1984) ............................................................................. 9, 35, 39, 45

*Ali v. Rumsfeld,*
   649 F.3d 762 (D.C. Cir. 2011) ............................................................................................. 14

*Allmon v. Fed. Bureau of Prisons,*
   605 F. Supp. 2d 1 (D.D.C. 2009) ................................................................................... 25, 30

*Arnold v. U.S. Secret Serv.,*
   524 F. Supp. 2d 65 (D.D.C. 2007) ................................................................................. 23, 30

*Art Metal-USA, Inc. v. United States,*
   753 F.2d 1151 (D.C. Cir. 1985) ........................................................................................... 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................. 39

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................... 28, 33, 34

*Bell v. Library of Congress,*
   539 F. Supp. 2d 411 (D.D.C. 2008) ............................................................................... 14, 17

*Block v. North Dakota,*
   461 U.S. 273 (1983) ............................................................................................................. 15

*Budik v. Dartmouth-Hitchcock Med. Ctr.,*
   937 F. Supp. 2d 5 (D.D.C. 2013) ................................................................................... 14, 16

*Celikgogus v. Rumsfeld,*
   920 F. Supp. 2d 53 (D.D.C. 2013) ...................................................................................... 14

*Chambers v. U.S. Dep't of Interior,*
   568 F.3d 998 (D.C. Cir. 2009) ............................................................................... 25, 27, 41

*Cloonan v. Holder,*
   768 F. Supp. 2d 154 (D.D.C. 2011) ..................................................................................... 18

*Conklin v. U.S. Bureau of Prisons,*
   514 F. Supp. 2d 1 (D.D.C. 2007) ................................................................................... 25, 30

*Cruz-Packer v. Chertoff,*
   612 F. Supp. 2d 67 (D.D.C. 2009) ...................................................................................... 16

*Deters v. U.S. Parole Comm'n,*
   85 F.3d 655 (D.C. Cir. 1996) ......................................................................................... 24, 25

*Dickson v. Office of Pers. Mgmt.,*
   828 F.2d 32 (D.C. Cir. 1987) ......................................................................................... 9, 35

*Djenasevic v. Exec. U.S. Attorney's Office*,
   579 F. Supp. 2d 129 (D.D.C. 2008) .................................................................. 27, 45

*Doe v. Chao*,
   540 U.S. 614 (2004) ..................................................................................... 7, 9, 25, 35

*Doe v. FBI*,
   936 F.2d 1346 (D.C. Cir. 1991) .................................................................. 21, 31, 33

*Doe v. U.S. Dep't of Justice*,
   660 F. Supp. 2d 31 (D.D.C. 2009) ............................................................. 27, 41, 42

*Doe v. U.S. Dep't of Treasury*,
   706 F. Supp. 2d 1 (D.D.C. 2009) ......................................................................... 18

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) .............................................................................. 36

*Edmonds v. United States*,
   436 F. Supp. 2d 28 (D.D.C. 2006) ...................................................................... 16

*FAA v. Cooper*,
   132 S. Ct. 1441 (2012) ............................................................................................ 31

*Fed. Deposit Ins. Corp. v. Meyer*,
   510 U.S. 471 (1994) .............................................................................................. 15

*Fisher v. Nat'l Inst. of Health*,
   934 F. Supp. 464 (D.D.C. 1996) ........................................................................ 8, 18

*GAF Corp. v. United States*,
   818 F.2d 901 (D.C. Cir. 1987) .................................................................... 10, 14, 17

*Gardner v. United States*,
   213 F.3d 735 (D.C. Cir. 2000) .............................................................................. 15

*Gerlich v. U.S. Dep't of Justice*,
   711 F.3d 161 (D.C. Cir. 2013) .................................................................. 24, 31, 41

*Hurt v. D.C. Court Servs. & Offender Supervision Agency*,
   827 F. Supp. 2d 16 (D.D.C. 2011) ...................................................................... 45

*J. Roderick MacArthur Found. v. FBI*,
   102 F.3d 600 (D.C. Cir. 1996) ............................................................................. 32

*Jackson v. United States*,
   857 F. Supp. 2d 158 (D.D.C. 2012) .................................................................... 16

*Jefferson v. Collins*,
   905 F. Supp. 2d 269 (D.D.C. 2012) .................................................................... 40

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) .................................................................. 28, 33, 34

*Krieger v. U.S. Dep't of Justice*,
   529 F. Supp. 2d 29 (D.D.C. 2008) ................................................................ 34, 42

iv

*Kugel v. Small,*
    519 F. Supp. 2d 66 (D.D.C. 2007) ........................................................................ 16

*Laningham v. U.S. Navy,*
    813 F.2d 1236 (D.C. Cir. 1987) ..................................................................... 39, 45

*Maydak v. United States,*
    363 F.3d 512 (D.C. Cir. 2004) ................................................................. 21, 32, 41

*Maydak v. United States,*
    630 F.3d 166 (D.C. Cir. 2010) ..................................................................... 9, 35, 45

*McCready v. Nicholson,*
    465 F.3d 1 (D.C. Cir. 2006) ...................................................................... 18, 25, 34

*McIntyre v. Fulwood,*
    892 F. Supp. 2d 209 (D.D.C. 2012) ...................................................................... 45

*McNeil v. United States,*
    508 U.S. 106 (1993) ................................................................................... 13, 17

*Minnick v. Carlile,*
    946 F. Supp. 2d 128 (D.D.C. 2013) ...................................................................... 14

*Moore v. Valder,*
    65 F.3d 189 (D.C. Cir. 1995) ............................................................................... 15

*Nagel v. U.S. Dep't of Health, Educ. & Welfare,*
    725 F.2d 1438 (D.C. Cir. 1984) ..................................................................... 32, 33

*Nat'l ATM Council, Inc. v. Visa, Inc.,*
    922 F. Supp. 2d 73 (D.D.C. 2013) ............................................................ 28, 33, 34

*Osborn v. Haley,*
    549 U.S. 225 (2007) .......................................................................................... 12

*Paige v. DEA,*
    665 F.3d 1355 (D.C. Cir. 2012) ....................................................................... 8, 17

*Peter B. v. United States,*
    579 F. Supp. 2d 78 (D.D.C. 2008) ...................................................................... 16

*Ponder v. Chase Home Fin., LLC,*
    865 F. Supp. 2d 13 (D.D.C. 2012) ...................................................................... 36

*Reporters Comm. for Freedom of Press v. Am. Tel. & Tel. Co.,*
    593 F.2d 1030 (D.C. Cir. 1978) .......................................................................... 28

*Reuber v. United States,*
    829 F.2d 133 (D.C. Cir. 1987) ............................................................................ 21

*Robertson v. Cartinhour,*
    867 F. Supp. 2d 37 (D.D.C. 2012) ...................................................................... 40

*Scott v. Conley,*
    2013 WL 1409310 (D.D.C. Apr. 9, 2013) ........................................................ 33, 45

*Settles v. U.S. Parole Comm'n,*
   429 F.3d 1098 (D.C. Cir. 2005) ...................................................................... 15

*Sieverding v. U.S. Dep't of Justice,*
   693 F. Supp. 2d 93 (D.D.C. 2010) ............................................................. 23, 32

*Sloan v. U.S. Dep't of Hous. & Urban Dev.,*
   236 F.3d 756 (D.C. Cir. 2001) ...................................................................... 15

*Smalls v. Emanuel,*
   840 F. Supp. 2d 23 (D.D.C. 2012) ................................................................ 16

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C. Cir. 2007) ................................................. 8, 17, 20, 39

*Thompson v. Dep't of State,*
   400 F. Supp. 2d 1 (D.D.C. 2005) .......................................................... *passim*

*Tijerina v. Walters,*
   821 F.2d 789 (D.C. Cir. 1987) ...................................................................... 45

*Toolasprashad v. Bureau of Prisons,*
   286 F.3d 576 (D.C. Cir. 2002) ...................................................................... 27

*Tri-State Hosp. Supply Corp. v. United States,*
   341 F.3d 571 (D.C. Cir. 2003) ...................................................................... 15

*United States v. Barth,*
   990 F.2d 422 (8th Cir. 1993) ........................................................................ 29

*United States v. Connell,*
   960 F.2d 191 (1st Cir. 1992) ......................................................................... 29

*United States v. Orleans,*
   425 U.S. 807 (1976) ...................................................................................... 15

*United States v. Smith,*
   499 U.S. 160 (1991) ...................................................................................... 12

*Upshaw v. United States,*
   669 F. Supp. 2d 32 (D.D.C. 2009) ........................................................... 14, 17

*White v. OPM,*
   840 F.2d 85 (D.C. Cir. 1988) ........................................................................ 39

*Wisdom v. Dep't of Hous. & Urban Dev.,*
   713 F.2d 422 (8th Cir.1983) ......................................................................... 45

*Wuterich v. Murtha,*
   562 F.3d 375 (D.C. Cir. 2009) ...................................................................... 12

*York v. McHugh,*
   850 F. Supp. 2d 305 (D.D.C. 2012) .............................................................. 20

**Federal Statutes**

5 U.S.C § 552a .................................................................................... *passim*

18 U.S.C. § 2701 ................................................................................................................... 10

18 U.S.C. § 2712 ..................................................................................................... 10, 11, 16

18 U.S.C. § 3771 ................................................................................................................... 26

28 U.S.C. § 1346(b) ......................................................................................................... 15, 21

28 U.S.C. § 2674 ................................................................................................................... 15

28 U.S.C. § 2675(a) ................................................................................................... 13, 14, 17

28 U.S.C. § 2679 ..................................................................................................... 11, 12, 13

28 U.S.C. § 2680(h) ....................................................................................................... 13, 15

**Federal Regulations**

28 C.F.R. § 16.51 ................................................................................................................. 42

28 C.F.R. § 16.96 ....................................................................................................... 9, 22, 29, 30

32 C.F.R. § 312.12 ..................................................................................................... 9, 22, 23

**Federal Rules**

Fed. R. Civ. P. 8(a) ............................................................................................................. 40

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 4, 10, 16

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4

## INTRODUCTION

In response to defendants' motion to dismiss, plaintiffs Jill Kelley and Scott Kelley amended their complaint to modify allegations, add counts, and sue additional defendants. Despite this effort, plaintiffs have again failed to demonstrate that they are entitled to relief. Many of the claims in plaintiffs' amended complaint suffer from the same jurisdictional and pleading shortcomings as identified previously, such as the failure to satisfy the substantive and procedural requirements of the two statutes under which they sue, the Privacy Act and the Stored Communications Act.   The amended complaint also contains additional jurisdictional and pleading deficiencies, particularly with respect to the six newly added defendants.   Thus, Counts One through Eight and Eleven through Fourteen of plaintiffs' amended complaint should be dismissed for a lack of subject matter jurisdiction and/or a failure to state a claim for relief. [1]

Several of plaintiffs' claims fail on their face to establish necessary elements of this Court's subject matter jurisdiction.   The individually named defendants, who are sued for state-law tort claims in Counts Eleven through Fourteen, are entitled to absolute immunity under the Westfall Act.   The Department of Justice has certified that these defendants were acting within the scope of their employment regarding the alleged tortious conduct.   *See* Certification by Rupa Bhattacharyya (copy attached as Ex. 1).   The Westfall Act thereby requires that the United States be substituted for those defendants and that plaintiffs' state-law tort claims proceed against the United States under the terms of the Federal Tort Claims Act (the "FTCA").   Because the FTCA's waiver of sovereign immunity defines the extent to which the United States is subject to suit, it controls whether plaintiffs may proceed with their state-law tort claims.   By its terms, the

---

[1] Plaintiffs also sue three FBI officials in their individual capacities for constitutional violations.   Those officials, Sean Joyce, Steven Ibison, and Adam Malone, respond to the *Bivens* claims in Counts Nine and Ten of the amended complaint through a separate motion to dismiss.

FTCA requires a presentment of state-law tort claims to the relevant federal agencies for consideration, and plaintiffs have not alleged doing so.   Similarly, the FTCA does not permit suits arising out of libel, slander, or misrepresentation, and plaintiffs' claims in Counts Eleven and Twelve for defamation and false light are jurisdictionally barred due to that limitation.

Plaintiffs' claims under the Stored Communications Act in Counts Seven and Eight fail for a similar jurisdictional reason.   The Stored Communications Act incorporates the FTCA's presentment requirement, but again plaintiffs have not alleged a presentment of their claims. Consequently, plaintiffs are jurisdictionally barred from litigating those claims now.

Beyond its jurisdictional deficiencies, the amended complaint fails to state necessary elements of plaintiffs' Privacy Act claims.   By its terms, the Privacy Act provides location-based protections:   only records within non-exempt systems of records are within its general coverage. Plaintiffs' allegations neglect that important requirement.   For instance, to be actionable, disclosed information about an individual must have been retrieved from a protected system of records.   But plaintiffs fail to make allegations to satisfy this rule of retrieval, and that omission prevents plaintiffs from stating a claim for a wrongful disclosure.   Plaintiffs' allegations also fail to account for the Privacy Act's other location-based protections.   Specifically, the Privacy Act permits agencies to exempt certain of their record systems from several of the Privacy Act's requirements, and claims for improper maintenance and adverse determinations can be brought only with regard to non-exempt records.   Both the FBI and DoD have exempted several relevant systems of records from those obligations.   But plaintiffs do not allege that the information upon which they base their claims was maintained in any non-exempt location.   Nor do plaintiffs allege that the FBI or DoD made an adverse determination about them based on records in a non-exempt location.

Plaintiffs' remaining Privacy Act counts fare no better.   Plaintiffs premise one of their claims on the allegation that a statement in an FBI 302 by an FBI agent omitted a detail regarding Jill Kelley, and consequently, according to plaintiffs, the statement was inaccurate and incomplete. But plaintiffs do not establish that such information was relevant to the FBI's law enforcement investigation.   As an irrelevant fact, that omission had no plausible impact on the accuracy or completeness of the FBI records, much less any records maintained by DoD.   Plaintiffs also claim that the State Department violated the Privacy Act by allegedly disseminated inaccurate information about Jill Kelley at two press conferences.   A review of those transcripts (which are referenced in the complaint and may therefore be considered in evaluating the plausibility of plaintiffs' allegations), as well as the precise nature of Jill Kelley's status as a representative of the Republic of South Korea – and not the United States – confirms that there was nothing inaccurate in the State Department's denial of a formal affiliation with Jill Kelley.

Plaintiffs also assert that the FBI and DoD maintained records regarding their exercise of First Amendment rights in violation of the Privacy Act, but this claim neglects the broad scope of the law enforcement exception to that Privacy Act provision.   Because the information at issue was related to law enforcement investigations that the FBI and DoD were conducting, it was outside of the Privacy Act's protections.

Finally, plaintiffs claim that the FBI and DoD failed to establish Privacy Act safeguards, but the public record belies that claim:   both the FBI and DoD have promulgated numerous rules and regulations to safeguard Privacy Act protected information.   Because plaintiffs' Privacy Act allegations, even when liberally construed, do not sustain the claims they attempt to bring, those claims should be dismissed.

## FACTUAL BACKGROUND

As alleged in the amended complaint,[2] plaintiffs Jill Kelley and Scott Kelley reside in Tampa, Florida, which has an extensive military presence.   *See* Am. Compl. ¶¶ 17-18.   Jill Kelley has volunteered to provide community outreach and support for the military community in Tampa, and over time, the Kelleys have become acquainted with a number of senior military leaders and their families, including General David H. Petraeus and General John R. Allen, Jr. *See id*. ¶ 32.   The Kelleys interacted socially with those senior leaders on a regular basis, often sharing social news and personal reflections.   *See id.*

In May 2012, General John Allen received an email message that negatively referenced Jill Kelley.   *See* Am. Compl. ¶ 38.   General Allen emailed Jill Kelley regarding the hostile message, which also contained specific non-public knowledge of an upcoming dinner with several senior foreign intelligence, defense, and diplomatic officials.   *See id*. ¶¶ 38-43.   Because the email frightened the Kelleys personally and raised their concerns for the safety of senior military leaders, Jill Kelley contacted Fred Humphries, an FBI counterintelligence agent at nearby MacDill Air Force Base, with whom Jill Kelley had a social relationship.   *See id*. ¶ 40, 44.

In June, the Kelleys received similar emails at an email address they shared.   *See* Am. Compl. ¶¶ 41, 47.   In an effort to learn the identity of the person sending the hostile emails, Jill Kelley met with FBI agents several times.   *See id*. ¶¶ 45, 46.   The FBI initially requested limited access to the Kelleys' shared email account, and Jill Kelley consented to that request.   *See id*. ¶ 49.   The FBI later requested broader access to the Kelleys' shared email account, and Jill Kelley denied that request.   *See id*. ¶ 50.

---

[2]   Consistent with the standard of review for facial jurisdictional challenges under Rule 12(b)(1) and for challenges to the sufficiency of a complaint's allegations under Rule 12(b)(6), the allegations from plaintiffs' amended complaint are assumed true for purposes of this motion.

Around that time, the Kelleys became dissatisfied with the FBI and its investigation.   The Kelleys believe that the FBI obtained additional email communications from their shared account and that they did not receive victims' assistance or case updates that they were due.   *See* Am. Compl. ¶¶ 58, 64-67.   At one point, Special Agent Humphries told the Kelleys that the FBI had directed him to exclude from a sworn FBI 302 statement an express denial that he had a sexual relationship with Jill Kelley.   *See id.* ¶¶ 68, 75.   In addition, the Kelleys suspect that the FBI investigation expanded to look into whether Jill Kelley was having an affair with General Petraeus. *See id.* ¶ 70.

Despite their dissatisfaction with the FBI's investigation, the Kelleys do not claim to have received any hostile emails after June 2012.   *See* Am. Compl. ¶¶ 53, 55.   As far as the alleged cyberstalker, the Kelleys later came to understand that it was Paula Broadwell, who, in November 2012, was reported by the news media to have had an affair with General Petraeus.   *See id.* ¶¶ 56, 77.   Around that time, as well, based on information learned in the course of its investigation, the FBI provided officials at the Department of Defense with emails between Jill Kelley and United States Marine Corps General John R. Allen.   *See id.* ¶ 5.

Shortly after the Petraeus-Broadwell affair was reported in the media, Jill Kelley's name appeared in the news as a recipient of harassing emails from Paula Broadwell.   *See* Am. Compl. ¶¶ 80-81.   Several news media attributed knowledge of Jill Kelley's identity to unnamed governmental officials.   *See id.* ¶¶ 80, 83-85.   A few days later in November 2012, the news media began reporting that there were large numbers of potentially inappropriate emails between General Allen and Jill Kelley.   *See id.* ¶¶ 84-85.   The news outlets again attributed those reports to unnamed governmental officials.   *See id.*   The Kelleys believe that governmental officials impermissibly leaked these pieces of information to the press.   *See id.* ¶ 90.

Also in mid-November 2012, members of the press on two occasions asked a State Department representative whether Jill Kelley was connected with the State Department.   *See* Am. Compl. ¶¶ 86-87.   At the time, Jill Kelley served as an Honorary Consul for the Republic of Korea, and the State Department did not deny her position as Honorary Consul, but it responded that it had no formal affiliation with her – a response that Jill Kelley claims is inaccurate.   *See id.*

In reaction to these events as alleged by the Kelleys in their amended complaint, the Kelleys have filed this lawsuit, in which they sue the FBI, DoD, the State Department and the United States in for alleged violations of the Privacy Act and the Stored Communications Act. The Kelleys also sued five federal officials in their individual capacities for state-law tort claims.

## STATUTORY AND REGULATORY BACKGROUND

### *The Privacy Act of 1974*

Congress enacted the Privacy Act in the wake of several notorious scandals in which the federal government officially collected, stored, and used the personal information of citizens.   For example, the legislative history of the Privacy Act references the army's domestic spying program on political dissidents; the FBI's secret surveillance of the Urban League, the Southern Christian Leadership Conference, and persons who planned the first Earth Day; as well as the White House "plumbers," whose actions ultimately led to the Watergate scandal.   *See* S. Rep. No. 93-1183 (Sept. 26, 1974), *reprinted in* LEGISLATIVE HISTORY OF THE PRIVACY ACT OF 1974 S. 3418 (PUBLIC LAW 93-579):   SOURCE BOOK ON PRIVACY at 794-96 (hereafter "PRIVACY ACT SOURCE BOOK"); Statement of Senator Nelson (Nov. 21, 1974) *reprinted in* PRIVACY ACT SOURCE BOOK at 794-96.[3]   Adding to those congressional concerns was the realization that the increasing use of

---

[3] The PRIVACY ACT SOURCE BOOK is available online at http://www.loc.gov/rr/frd/Military_Law/LH_privacy_act-1974.html.

computers and sophisticated information technology had the potential to enable greater governmental intrusion into personal privacy.   *See* Privacy Act of 1974, Pub. L. No. 93-579, § 2(A)(2) (Dec. 31, 1974).   In response, Congress concluded that "to protect the privacy of individuals identified in information systems maintained by federal agencies, it is necessary and proper for the Congress to regulate the collection, maintenance, use, and dissemination of information by such agencies."   *Id.* § 2(A)(5).   In furtherance of that purpose, the Privacy Act protects personal privacy by "giv[ing] agencies detailed instructions for managing their records and provid[ing] for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."   *Doe v. Chao*, 540 U.S. 614, 618 (2004).

The Privacy Act achieves its goals through a series of detailed provisions, which impose several requirements on federal agencies regarding the collection, use, maintenance, and dissemination of personal information.   Those obligations include the duties to maintain only relevant and necessary records, *see* 5 U.S.C. § 552a(e)(1); to ensure that records used to make determinations about an individual or later disseminated satisfy certain informational quality standards, *see id.* § 552a(e)(5)-(6); to prohibit the collection of records describing how individuals exercise their First Amendment rights, *see id.* § 552a(e)(7); and to establish safeguards for the protection of personal information, *see id.* § 552a(e)(10).   The Privacy Act also promotes transparency by providing a procedure through which individuals can gain access to agency records about them.   *See id.* § 552a(d).   Moreover, the Privacy Act prohibits the disclosure of personal information contained in agency records, subject to certain express exceptions.   *See id.* § 552a(b).   Critical to the present motion, the protections provided by the Privacy Act are also subject to two significant limitations:   the system of records requirement and the ability of agencies to opt-out of certain Privacy Act requirements through exemption rules.

First, many of the Privacy Act's protections are location-based in that they apply only to records within a system of records.   As statutorily defined, a "system of records" is a grouping of agency records from which information can be and is retrieved by an individual identifier:

> [T]he term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C § 552a(a)(5).   For transparency purposes, an agency must provide notice in the Federal Register of each system of records it maintains along with certain details regarding the characteristics of the system of records, such as the categories of individuals on whom records are maintained in the system and the categories of records maintained in the system.   *See id.* § 552a(e)(4).   Several of the Privacy Act's provisions apply only to records maintained within a system of records.   For example, the disclosure prohibition, the limitation on maintaining relevant and necessary records, and the obligation to establish safeguards all apply only to records maintained within a system of records.   *See Paige v. DEA*, 665 F.3d 1355, 1360 (D.C. Cir. 2012); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1123 (D.C. Cir. 2007); *Fisher v. Nat'l Inst. of Health*, 934 F. Supp. 464, 473 (D.D.C. 1996).

In addition to those location-based limits on its protections, the Privacy Act is confined by exemption rules.   Specifically, the Privacy Act permits agencies to opt-out of several of its requirements though rulemaking.   *See generally* 5 U.S.C. § 552a(j)-(k).   For instance, in furtherance of law enforcement activities, agencies can exempt systems of records from several Privacy Act obligations.   *See id.* § 552a(j)(2), (k)(2).   As relevant here, the FBI and DoD have

exempted several of their law enforcement systems of records from the Privacy Act's requirements.[4]

As a means of redressing violations of its protections, the Privacy Act provides four civil remedies.   The first three causes of action apply to the specific situations in which individuals seek the amendment of records, access to records, or damages resulting from adverse determinations based on records of low informational quality.   *See* 5 U.S.C. § 552a(g)(1)(A)-(C). The fourth cause of action is a catch-all, which permits individuals to sue for actual damages resulting from a violation of any other Privacy Act provision.   *See id.* § 552a(g)(1)(D).   The catch-all provision requires four elements in addition to those needed to demonstrate the underlying Privacy Act violation:   (i) intentional and willful agency action; (ii) that proximately caused; (iii) an adverse effect on an individual; and (iv) that resulted in actual damages.   *See* 5 U.S.C. § 552a(g)(a)(D), (g)(4); *see also Doe v. Chao*, 540 U.S. at 616 (requiring actual damages to recover); *Maydak v. United States*, 630 F.3d 166, 179-80 (D.C. Cir. 2010) (explaining the burden of proof on plaintiffs for the intentional and willful requirement); *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 37 (D.C. Cir. 1987) ("The adverse effect must be proximately caused by the Privacy Act violation."); *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984) ("The Act does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions.").

### The Stored Communications Act

The Stored Communications Act was enacted as Title II of the Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (Oct. 21, 1986)

---

[4]   The FBI's law enforcement exemptions are published as 28 C.F.R. § 16.96(a)(1), (c)(1), (e)(1), (g)(1), (j)(1), (l)(1), (n)(1), (p)(1), (r)(1), & (t)(1).   The law enforcement exemptions for the DoD's Office of Inspector General are published at 32 C.F.R. § 312.12(d), (e), & (f).

(codified as amended at 18 U.S.C. §§ 2701-12).   As its name suggests, the Act addresses several matters related to stored electronic communications.   For instance, it sets forth criminal penalties for the unlawful access to stored communications.   *See* 18 U.S.C. § 2701.   It also prohibits entities that provide an electronic communication service to the public from disclosing the contents of a communication that they store.   *See id.* § 2702.   The Stored Communications Act also sets forth the warrant, subpoena, and notice procedures through which governmental entities can gain access to stored electronic communications or compel the creation of backup preservations of such communications.   *See id.* §§ 2703-05.

As amended in 2001 through the Patriot Act, the Stored Communications Act provides for civil remedies against the United States for violations of its terms.   *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001).   Specifically, a plaintiff injured by a violation of Stored Communications Act may sue the United States for the greater of $10,000 or actual damages, as well as reasonably incurred litigation costs.   *See* 18 U.S.C. § 2712(a).   Those remedies are exclusive of all others against the United States, and thus attorney's fees, injunctive relief, and punitive damages are not available against the United States for violations of the Stored Communications Act.   *See id.* § 2712(d); *see also id.* § 2708.   Procedurally, the Stored Communications Act adopts the presentment requirements of the FTCA, which prohibit civil suits absent the exhaustion of administrative remedies.   *See id.* § 2712(b)(1); *see also GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987) (explaining the presentment obligations under the FTCA).   Federal law enforcement activities take precedence over the civil remedy provisions of the Stored Communication Act, and upon motion of the United States, any civil suit against the United States must be stayed if a court determines that "civil discovery will adversely affect the

ability of the Government to conduct a related investigation or the prosecution of a related criminal

case."   18 U.S.C. § 2712(e)(1).   However, if a Court determines that a federal agency violated

any provision of the Act, then that agency is required to initiate a proceeding to determine whether

or not disciplinary action is warranted against a federal officer or employee.   *See id.* § 2712(c).

## ARGUMENT

I.   **COUNTS SEVEN, EIGHT, AND ELEVEN THROUGH FOURTEEN OF PLAINTIFFS' AMENDED COMPLAINT ARE OUTSIDE OF THE COURT'S JURISDICTION AND SHOULD BE DISMISSED**

A.   **Under the Westfall Act, the United States should be substituted for the individual-capacity defendants with regard to plaintiffs' state-law tort claims in Counts Eleven through Fourteen**

In Counts Eleven through Fourteen, plaintiffs sue five individual-capacity defendants for

state-law tort claims.   Those individual-capacity defendants are Leon Panetta, a former Secretary

of Defense; Sean Joyce, a former Deputy Director of the FBI; George Little, a former Assistant to

the Secretary of Defense for Public Affairs and Pentagon Press Secretary; Steven Ibison, a former

Special Agent in Charge of the FBI's Tampa, Florida Office; and Adam Malone, a FBI Special

Agent.   Under procedures established by the Westfall Act, the Department of Justice has certified

that these defendants acted within the scope of their official duties with respect to plaintiffs'

state-law torts claims, and accordingly, the United States is substituted as a defendant in place of

the individually-named defendants, who are immune from suit.

### 1.   The Westfall Act Substitution Process

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly

referred to as the Westfall Act, amended the FTCA to confer federal employees with absolute

immunity from tort claims based on their actions within the scope of their federal employment.

*See* Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No.

100-694, § 5, 102 Stat. 4563 (Nov. 18, 1988) (codified as amended at 28 U.S.C. § 2679(b)); *see*

*also Osborn v. Haley*, 549 U.S. 225, 229 (2007) (explaining that the Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties"); *United States v. Smith*, 499 U.S. 160, 163 (1991) (explaining that the Westfall Act "establishes the absolute immunity for Government employees"); *Wuterich v. Murtha*, 562 F.3d 375, 377 (D.C. Cir. 2009).   The Westfall Act provides immunity by specifying that a claim against the United States under the FTCA is the exclusive remedy for injuries resulting from the negligent and wrongful acts of federal employees within the scope of their employment.   *See* 28 U.S.C. § 2679(b).

The Westfall Act establishes a procedure for substituting the United States as a defendant in place of federal employees who have been sued for negligent or wrongful acts within the scope of their employment.   Specifically, if the Attorney General or his designee certifies that the employee was acting within the scope of employment, the United States is thereby substituted as defendant for the federal employee at the time of that certification:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in a United States District Court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1); *see also Wuterich*, 562 F.3d at 380 ("Upon the Attorney General's certification, the federal employee is dismissed from the case and the United States is substituted as the defendant in place of the employee.").[5]

---

[5]   If the Attorney General or his designee does not certify that a defendant-employee acted within the scope of employment, the defendant-employee may still, at any time before trial, petition the court to certify that the defendant-employee's actions were within the scope of his employment.   *See* 28 U.S.C. § 2679(d)(3).   If the Court grants defendant-employee's petition, then the United States would be substituted as a defendant in place of the employee.   *See id.*

2. **The individual-capacity defendants should be dismissed from the state-law counts because the United States has certified their actions under the Westfall Act**

A Westfall Act certification has been made to substitute the United States for the individual-capacity defendants in Counts Eleven through Fourteen. *See* Certification by Rupa Bhattacharyya (copy attached as Ex. 1). In making that certification, the Department of Justice reviewed the allegations against the five individual-capacity defendants, particularly with respect to the four state-law claims, and determined that the individual-capacity defendants were acting within the scope of their respective offices. *See id.* Based on the operation of that certification, the individual-capacity defendants are dismissed from Counts Eleven through Fourteen, and the United States substituted in their places. *See* 28 U.S.C. § 2679(d)(1).

B. **Upon the Westfall Act substitution, plaintiffs are jurisdictionally barred from proceeding with their state-law tort claims against the United States**

Due to the Westfall Act certification, plaintiffs must proceed with their state-law tort claims against the United States under the FTCA. Although the FTCA is a waiver of sovereign immunity, that waiver has procedural and substantive limitations. Procedurally, a plaintiff may not proceed with FTCA claims without having first presented those claims to the relevant federal agencies. *See* 28 U.S.C. § 2675(a). Substantively, the FTCA excludes certain actions from its waiver of sovereign immunity, including claims arising out of libel, slander, or misrepresentation. *See id.* § 2680(h). Those limitations apply here to bar plaintiffs' state-law tort claims in Counts Eleven through Fourteen.

1. **Plaintiffs' state-law claims are outside of the Court's jurisdiction because plaintiffs have not alleged presenting those claims to the relevant federal agencies**

Before a court has jurisdiction over an FTCA claim, a plaintiff must present its claim to the relevant federal agency. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113

(1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Upshaw v. United States*, 669 F. Supp. 2d 32, 45 (D.D.C. 2009) (dismissing a case for lack of subject matter jurisdiction where plaintiff did not plead presentment claims to the appropriate federal agency); *Bell v. Library of Congress*, 539 F. Supp. 2d 411, 413 (D.D.C. 2008) (same).   To satisfy that presentment requirement, a plaintiff must file with the appropriate federal agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp.*, 818 F.2d at 919; *see also* 28 U.S.C. § 2675(a).   After making such a presentment, a potential plaintiff cannot initiate a civil action until the agency has denied the claims or the expiration of six months since the date of presentment.   *See* 28 U.S.C. § 2675(a).   The rule is clear:   a civil action that does not allege a prior presentment of claims to a federal agency should be dismissed for lack of subject matter jurisdiction.   *See Ali v. Rumsfeld*, 649 F.3d 762, 775 (D.C. Cir. 2011) (dismissing claims against the United States for a lack of presentment after a Westfall Act substitution); *Minnick v. Carlile*, 946 F. Supp. 2d 128, 135 (D.D.C. 2013) (same); *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 16 (D.D.C. 2013) (same); *Celikgogus v. Rumsfeld*, 920 F. Supp. 2d 53, 59 (D.D.C. 2013) (same).   Here, plaintiffs have not alleged presenting any of their state-law tort claims to any federal agency.   On that ground alone, Counts Eleven through Fourteen should be dismissed.

> **2.     Plaintiffs' state-law claims for defamation and false light in Counts Eleven and Twelve are outside of the FTCA's waiver of sovereign immunity**

In addition, as a matter of sovereign immunity, plaintiffs cannot proceed with suit against the United States under the FTCA for defamation and false light privacy torts.   That is so because the United States has not waived its sovereign immunity for any tort "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander,*

*misrepresentation*, deceit, or interference with contract rights . . . ."   28 U.S.C. § 2680(h)

(emphasis added).   Because both defamation and false light claims (here, in Counts Eleven and

Twelve of the amended complaint) fall within the libel-slander-misrepresentation exception,

sovereign immunity has not been waived, and plaintiffs cannot proceed as a matter of jurisdiction.

Under the principle of sovereign immunity, the United States can be sued only where it has

expressly consented to such suit by statute.   *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471,

475 (1994); *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *Settles v. U.S. Parole Comm'n*,

429 F.3d 1098, 1105 (D.C. Cir. 2005).   The FTCA is a limited waiver of sovereign immunity

because it provides a remedy against the United States for certain torts of its officers and

employees.   *See* 28 U.S.C. §§ 1346(b), 2674; *United States v. Orleans*, 425 U.S. 807, 813 (1976);

*Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).   However, as

articulated in 28 U.S.C. § 2680(h), certain intentional torts are specifically excluded from the

FTCA's waiver of sovereign immunity.   *See* 28 U.S.C. § 2680(h); *Moore v. Valder*, 65 F.3d 189,

196 (D.C. Cir. 1995).   As to the excluded torts, the United States' immunity is preserved, and a

court lacks subject matter jurisdiction over those torts.   *See, e.g., Sloan v. U.S. Dep't of Hous. &*

*Urban Dev.*, 236 F.3d 756, 759, 765 (D.C. Cir. 2001).

A claim of defamation is outside of the FTCA's waiver of sovereign immunity, which

explicitly excludes claims for libel, slander, and misrepresentation.   *See* 28 U.S.C. § 2680(h).

The D.C. Circuit has interpreted those exceptions broadly.   *See Art Metal-USA, Inc. v. United*

*States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985) (explaining that injurious falsehood, disparagement

of property, slander of goods, and trade libel are "claims arising out of libel or slander").   Not

surprisingly, the libel-slander-misrepresentation exception bars defamation suits under the FTCA.

*See Gardner v. United States*, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000); *Smalls v. Emanuel*,

840 F. Supp. 2d 23, 34 (D.D.C. 2012); *Cruz-Packer v. Chertoff*, 612 F. Supp. 2d 67, 69 n.3 (D.D.C. 2009).   Consequently, Count Eleven of plaintiffs' amended complaint for defamation should be dismissed as outside of the FTCA's waiver of sovereign immunity.   *See Budik*, 937 F. Supp. 2d at 15 (dismissing false statement claims as outside of the FTCA after a Westfall Act substitution); *Jackson v. United States*, 857 F. Supp. 2d 158, 161 (D.D.C. 2012) (same).

The libel-slander-misrepresentation exception also excludes false light claims from the FTCA's waiver of sovereign immunity.   As explained by a court in this District, "Courts consistently have held that claims for 'false light' invasion of privacy are barred by the libel and slander exception."   *Edmonds v. United States*, 436 F. Supp. 2d 28, 35 (D.D.C. 2006); *see also Peter B. v. United States*, 579 F. Supp. 2d 78, 83 (D.D.C. 2008) (dismissing false light claims under the FTCA based on the libel-slander-misrepresentation exception); *Kugel v. Small*, 519 F. Supp. 2d 66, 75 n.8 (D.D.C. 2007) (same).   That same result should follow here – plaintiffs' false light claims in Count Twelve are within the libel-slander-misrepresentation exception, and therefore they are outside of the FTCA's waiver of sovereign immunity.

**C.      Plaintiffs' claims under the Stored Communications Act are jurisdictionally barred**

Plaintiffs sue the United States in Counts Seven and Eight for alleged violations of the disclosure and delayed notice provisions of the Stored Communications Act.   *See* Am. Compl. ¶¶ 170-80.   However, for a claim to be actionable under the Stored Communications Act, it must first satisfy the presentment requirement of the FTCA:

> Any action against the United States under this section may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act, as set forth in title 28, United States Code.

18 U.S.C. § 2712(b)(1).   As explained above, presentment requires a written filing with the appropriate federal agency that (i) describes the alleged injury in sufficient detail to enable the

agency to begin its own investigation, and (ii) makes a sum-certain damages claim.   *See GAF Corp.*, 818 F.2d at 919; *see also* 28 U.S.C. § 2675(a).   The presentment requirement is jurisdictional.   *See McNeil*, 508 U.S. at 113; *Upshaw*, 669 F. Supp. 2d at 45; *Bell*, 539 F. Supp. 2d at 413.   Yet here, plaintiffs do not allege that they filed any written claim with either the FBI or to DoD, let alone one that sufficiently described their alleged injury under the Stored Communications Act and contained a sum-certain damages claim.   Without having done so, plaintiffs are unable to avail themselves of this Court's jurisdiction under the Stored Communications Act, and Counts Seven and Eight must be dismissed.

## II.   PLAINTIFFS DO NOT ALLEGE FACTS NECESSARY FOR THEIR PRIVACY ACT CLAIMS AND COUNTS ONE THROUGH SIX SHOULD BE DISMISSED

### A.   Plaintiffs' disclosure claim under the Privacy Act fails because the amended complaint does not satisfy the retrieval rule

Plaintiffs allege in Count One that the FBI and DoD impermissibly shared information with members of the press and media outlets.   *See* Am. Compl. ¶¶ 113-24.   Based on those allegations, plaintiffs pursue an unauthorized disclosure claim under subsection (b) of the Privacy Act, through the catch-all civil remedy provision.   *See* 5 U.S.C. § 552a(b), (g)(1)(D), (g)(4). Plaintiffs' claim should be dismissed because the amended complaint lacks allegations that defendants violated the retrieval rule, which is a necessary element of an unauthorized disclosure claim under the Privacy Act.

For a disclosure to be unlawful under the Privacy Act, the retrieval rule requires that the information disclosed first be retrieved from a record that is contained within an agency's system of records (not from some independent source), and that is retrievable by a plaintiff's name or identifying particular.   *See Paige*, 665 F.3d at 1360 (rejecting a disclosure claim where the information released was not retrieved from a system of records); *Sussman*, 494 F.3d at 1123 (explaining that to be unlawful, the disclosures had to be materials from records about a plaintiff

that were retrieved by plaintiff's name); *Fisher*, 934 F. Supp. at 473 ("Information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records." (quotation omitted)).   The retrieval rule is based on the plain text of the Privacy Act's prohibition on unauthorized disclosures, which applies only to records maintained within an agency's system of records – and not to all records maintained by an agency.   *See* 5 U.S.C §§ 552a(a)(5), 552a(b); *see McCready v. Nicholson*, 465 F.3d 1, 9 (D.C. Cir. 2006) ("The key limitation in the Act's definition of 'system of records' is its use of 'retrieved.'").   Beyond its textual grounding, the retrieval rule is justified for two additional reasons:   (1) the imposition of liability on federal agencies for the disclosure of independently-acquired information would impose an intolerable burden, and (2) the retrieval rule advances the purpose of the Privacy Act, which was to preclude information in a system of records from serving as the *source* of personal information about a person.   *See Doe v. U.S. Dep't of Treasury*, 706 F. Supp. 2d 1, 7 (D.D.C. 2009).   Accordingly, through the retrieval rule, agencies are not liable for the release of information that has not been actually retrieved from records within a Privacy Act system of records.   *See Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011) ("[A]n agency official who discloses information that he or she acquired from non-record sources – such as observation, office emails, discussions with co-workers and the 'rumor mill' – does not violate the Privacy Act in doing so, even if the information disclosed is also contained in agency records.").

Here, plaintiffs' allegations do not satisfy the retrieval rule.   First, plaintiffs do not aver that any disclosed information about them was retrieved from a record within a system of records. Rather, plaintiffs allege in a general fashion that information regarding them was maintained in, *and retrievable from*, a system of records:

> Information regarding the Kelleys and their report to the FBI of threatening and
> harassing cyberstalking is maintained within one or more Privacy Act systems of
> records retrievable by use of the Kelleys' names or by some identifying number,
> symbol or other identifying particular assigned to Plaintiffs.

Am. Compl. ¶ 114.   Although that statement generally alleges maintenance and *retrievability*,

which are critical elements of a Privacy Act claim, it does not aver an actual *retrieval* (and later

disclosure) of a record about plaintiffs from within a system of records.   Without alleging

retrieval from a system of records, paragraph 114 fails to state a disclosure claim under the Privacy

Act.

Plaintiffs' pleading deficiency is not cured by other allegations in the amended complaint.

For instance, plaintiffs later allege, upon information and belief, that the FBI and DoD shared

records regarding them with the media:

> Upon information and belief, on one or more occasions since the Kelleys first
> reported the threatening and criminal actions of the cyber stalker, the FBI shared
> records on the Kelleys with the DOD, and both shared those records and
> information contained therein with the media.

Am. Compl. ¶ 117.   Even if taken as true, any alleged sharing of records does not satisfy the

retrieval rule for the same reason – it contains no suggestion that any of the shared records were

retrieved from a Privacy Act system of records, and not some other location.

Nor can plaintiffs fill the void through their allegation, without more, that information from

a protected system of records was disseminated.   Plaintiffs allege that:

> Upon information and belief, on one or more occasions since the Kelleys first
> reported the threatening and criminal actions of the cyber stalker, numerous
> employees of the FBI and the DOD unlawfully and recklessly disseminated
> inaccurate, derogatory, and irrelevant information obtained from a protected
> system of records to media members and other third parties who were not
> authorized to receive such information.

Am. Compl. ¶ 119.   But a bare allegation of a retrieval *untethered to records about plaintiffs*

cannot sustain an unauthorized disclosure claim.   This is so for two reasons.   First, to satisfy the

retrieval rule, a plaintiff must allege that the "improperly disclosed materials [were] located in records retrievable by [his or her] name as opposed to someone else's name," and paragraph 119 does not allege that.   *Sussman*, 494 F.3d at 1123.   Second, the Privacy Act does not create third-party privacy rights, and thus an allegedly illegal disclosure of information about other individuals could not form the basis of plaintiffs' disclosure claim.   *See id*.

Absent an assertion that the allegedly disclosed information was actually retrieved from records that were retrievable by plaintiffs' names from a system of records, the unauthorized disclosure count fails.   *See York v. McHugh*, 850 F. Supp. 2d 305, 313 (D.D.C. 2012) ("Although it may appear counterintuitive, the Privacy Act does not protect against disclosure of all records containing personal or private information.").   Because plaintiffs' allegations do not satisfy the retrieval rule, Count One should be dismissed for failure to state a claim for relief.[6]

### B.   Plaintiffs fail to state a claim for the unlawful maintenance of records

In Count Two, plaintiffs claim that the FBI and the DoD maintained records that were irrelevant and unnecessary for the accomplishment of a legitimate purpose of either agency.   *See* Am. Compl. ¶¶ 125-33.   Based on those allegations, plaintiffs seek damages for a violation of subsection (e)(1) of the Privacy Act through the catch-all civil remedy provisions in subsection (g).   *See* 5 U.S.C. § 552a(e)(1), (g)(1)(D), (g)(4).   Plaintiffs fail to state a claim for relief, however.   The FBI and DoD have exempted several of their record systems from the requirements of subsection (e)(1), and plaintiffs do not aver that the alleged (e)(1) violation (the maintenance of irrelevant or unnecessary records in a system of records) occurred in a system of

---

[6]   Scott Kelley's claim should be dismissed on another ground as well – there are no plausible allegations of a disclosure of any information about him.   None of the alleged anonymous governmental sources identified in the amended complaint or its attachments are credited with providing any information about Scott Kelley to the press.   Without plausible allegations of a disclosure of information about him, Scott Kelley fails to state a claim in Count One.

records *that was subject to the requirements of subsection (e)(1)*.   *Cf.* Am. Compl. ¶ 114 (alleging

that "[i]nformation regarding the Kelleys and their report to the FBI of threatening and harassing

cyberstalking is maintained within one or more Privacy Act systems of records").

Subsection (e)(1) of the Privacy Act restricts the scope of the records that federal agencies

maintain.   Specifically, it limits a federal agency to maintaining only records relevant and

necessary to a legitimate purpose of that agency:

> Each agency that maintains a system of records shall –
> maintain in its records only such information about an individual as is relevant and
> necessary to accomplish a purpose of the agency required to be accomplished by
> statute or by executive order of the President.

5 U.S.C. § 552a(e)(1); *see also Reuber v. United States*, 829 F.2d 133, 138 (D.C. Cir. 1987).   This

requirement applies only to records maintained within an agency's system of records.   *See*

*Maydak v. United States*, 363 F.3d 512, 518 (D.C. Cir. 2004).   As explained by the Privacy Act

Guidelines, subsection (e)(1) "does not require that each agency conduct a detailed review of the

contents of each record in its possession."   Office of Management and Budget, Privacy Act

Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,961 (July 9, 1975).

Instead, the Privacy Act Guidelines direct agencies to "consider the relevance of, and necessity for,

the general categories of information maintained. . . ."   *Id.*

These obligations imposed by the Privacy Act are "not absolute," and "[t]he Act permits

agencies to exempt certain systems of records from some of its requirements."   *Doe v. FBI*,

936 F.2d 1346, 1351 (D.C. Cir. 1991).   Agencies, or components of agencies, that are engaged in

criminal law enforcement as their principal function may promulgate rules to exempt systems of

records related to criminal investigations from the requirements of subsection (e)(1).   *See*

5 U.S.C. § 552a(j)(2).

21

On the basis of its law enforcement functions, the FBI has exempted several of its systems of records from subsection (e)(1).   For example, the FBI has exempted its Central Records System, which contains investigative, personnel, applicant, administrative, and general files.   *See* 28 C.F.R. § 16.96(a)(1); *see also id.* § 16.96(c)(1), (e)(1), (g)(1), (j)(1), (*l*)(1), (n)(1), (p)(1), (r)(1), (t)(1).   The FBI made that exemption for four reasons:

(i)      It is not possible in all instances to determine relevancy or necessity of specific information in the early stages of a criminal or other investigation.

(ii)     Relevance and necessity are questions of judgment and timing; what appears relevant and necessary when collected ultimately may be deemed unnecessary.   It is only after the information is assessed that its relevancy and necessity in a specific investigative activity can be established.

(iii)    In any investigation the FBI might obtain information concerning violations of law not under its jurisdiction, but in the interest of effective law enforcement, dissemination will be made to the agency charged with enforcing such law.

(iv)     In interviewing individuals or obtaining other forms of evidence during an investigation, information could be obtained, the nature of which would leave in doubt its relevancy and necessity.   Such information, however, could be relevant to another investigation or to an investigative activity under the jurisdiction of another agency.

*See* 28 C.F.R. § 16.96(b)(3).

The Privacy Act also permits all agencies to exempt systems of records from the maintenance requirement of subsection (e)(1) for other law enforcement purposes.   *See* 5 U.S.C. § 552a(k)(2).   Consistent with that authority, DoD has exempted some of its systems of records from subsection (e)(1), including, for instance, an investigatory file system of the DoD Inspector General's Office, known as the Senior Official and Reprisal Investigation Case System, also referred to as CIG-15.   *See* 32 C.F.R. § 312.12(f); *see also id.* § 312.12(d), (e).   DoD justified that exemption on several grounds:

because the nature of the investigation function creates unique problems in prescribing specific parameters in a particular case as to what information is

> relevant or necessary.   Due to close liaison and working relationships with other
> Federal, state, local and foreign country law enforcement agencies, information
> may be received which may relate to a case under the investigative jurisdiction of
> another government agency.   It is necessary to maintain this information in order
> to provide leads for appropriate law enforcement purposes and to establish patterns
> of activity which may relate to the jurisdiction of other cooperating agencies.

*See* 32 C.F.R. § 312.12(f)(6).

Because both the FBI and DoD have relevant exempt systems of records, plaintiffs'

failure to allege an improper maintenance of records *in a non-exempt system of records* is fatal to

Count Two.   In light of plaintiffs' allegations that the FBI was investigating Jill Kelley's report of

cyberstalking, *e.g.*, Am. Compl. ¶¶ 90, 91, and that DoD was investigating whether General Allen

had inappropriate communications with Jill Kelley, *e.g., id.* ¶¶ 84, 89, 117, it is plausible that the

FBI and DoD maintained exempt law enforcement systems of records relevant to those

allegations.   But plaintiffs do not allege that either the FBI or DoD maintained records about them

in a non-exempt system of records subject to subsection (e)(1).   Without an allegation of the

maintenance of records within a non-exempt system of records, plaintiffs fail to state a claim for

relief under subsection (e)(1).   *See Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 102-03

(D.D.C. 2010); *cf. Arnold v. U.S. Secret Serv.*, 524 F. Supp. 2d 65, 67 (D.D.C. 2007) (dismissing a

claim under subsection (e)(5) related to an exempt system of records).

### C.      Plaintiffs' allegations do not constitute a claim of an adverse determination based on inaccurate or incomplete records

In Count Three, plaintiffs assert that the FBI and DoD violated subsection (e)(5) of the

Privacy Act by making determinations based on records that were inaccurate and incomplete.   *See*

Am. Compl. ¶¶ 134-41.   According to plaintiffs, the FBI and DoD maintained improper records

in two respects.   Plaintiffs claim first that the FBI dissuaded an FBI agent "from providing a

complete and accurate record on Mrs. Kelley," and second that the FBI and DoD engaged in an

"overbroad and irrelevant collection of the Kelleys' emails."   *Id.* ¶ 136.   Neither of these

contentions states a claim under subsection (e)(5) on which relief may be granted, and

Count Three should be dismissed.

### 1. Subsection (e)(5) claims proceed under the civil remedy provision in subsection (g)(3), and not the catch-all provision in subsection (g)(4)

The Privacy Act provides a remedy for situations in which agency determinations are

unfairly made due to inaccurate, irrelevant, untimely, or incomplete records.   Through

subsection (e)(5), the Privacy Act imposes an obligation on agencies to ensure the integrity of

records used to make determinations by requiring that federal agencies "maintain all records which

are used by the agency in making any determination about an individual with such accuracy,

relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the

individual in the determination."   5 U.S.C. § 552a(e)(5).   To pursue a damages claim under

subsection (e)(5), a plaintiff must proceed under the remedy provisions in subsection (g)(1)(C).

*See Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660-61 & n.5 (D.C. Cir. 1996) ("[A] plaintiff

seeking damages for noncompliance with the standard set out in subsection (e)(5) must sue under

subsection (g)(1)(C) and not subsection (g)(1)(D)."); *Thompson v. Dep't of State*, 400 F. Supp. 2d

1, 8 (D.D.C. 2005) (explaining that subsection (g)(1)(C) "provides the exclusive damages remedy

for violations of subsection (e)(5)").   Subsection (g)(1)(C) permits a civil suit when an agency

does not

> maintain any record concerning any individual with such accuracy, relevance,
> timeliness, and completeness as is necessary to assure fairness in any determination
> relating to the qualifications, character, rights, or opportunities of, or benefits to the
> individual that may be made on the basis of such record, and consequently a
> determination is made which is adverse to the individual . . . .

5 U.S.C. § 552a(g)(1)(C).   The provisions in subsections (e)(5) and (g)(1)(C) extend to agency

records even when not maintained in a system of records.   *See Gerlich v. U.S. Dep't of Justice*,

711 F.3d 161, 169 (D.C. Cir. 2013) ("The obligations the Privacy Act established in

subsection (e)(5) therefore apply even when the agency does not maintain the records at issue in its system of records."); *McCready*, 465 F.3d at 12 (explaining that "subsection (g)(1)(C) applies to any record, and not any record within a system of records" (quotations and emphasis omitted)). However, to recover damages under subsection (g)(1)(C), a plaintiff must also allege that the adverse agency determination was committed with an intentional or willful mental state, and that it was the proximate cause of actual damages. *See* 5 U.S.C. § 552a(g)(4). Moreover, the protections and civil remedy provided by subsections (e)(5) and (g)(1)(C) are subject to exceptions. For instance, subsection (j)(2) of the Privacy Act permits agencies (or components of agencies) with law enforcement responsibilities as their principal function to exempt law-enforcement systems of records that they maintain from the scope of subsection (e)(5). *See* 5 U.S.C. § 552a(j)(2).

Thus, altogether, to state a civil claim for relief under subsection (e)(5), a complaint must contain six allegations: (i) an intentional and willful; (ii) adverse determination; (iii) proximately caused by; (iv) a failure by an agency to maintain accurate, relevant, timely, and complete records; (v) in a non-exempt location; (vi) which resulted in actual damages. *See* 5 U.S.C. § 552a(g)(1)(c), (g)(4); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009); *Deters*, 85 F.3d at 657; *see also Doe v. Chao*, 540 U.S. at 615-16 (requiring actual damages to recover); *Allmon v. Fed. Bureau of Prisons*, 605 F. Supp. 2d 1, 6 (D.D.C. 2009) (dismissing a complaint where there was no allegation that the records at issue were located in a non-exempt system of records); *Conklin v. U.S. Bureau of Prisons*, 514 F. Supp. 2d 1, 6 (D.D.C. 2007) (same). Plaintiffs do not allege several of these elements, and therefore Count III should be dismissed.

### 2. The amended complaint does not state a claim under subsection (e)(5)

According to plaintiffs, the FBI and DoD made three adverse determinations that affected plaintiffs:  (i) the FBI's denial of assistance under the victims' assistance program, including the withholding of information about the investigation to plaintiffs and the denial of confidentiality typically afforded to crime victims; (ii) the FBI's conversion of plaintiffs into the subjects of the investigation; and (iii) DoD's revocation of privileged access to MacDill Air Force Base for Jill Kelley.  *See* Am. Compl. ¶¶ 106, 137.   None of those alleged adverse determinations is actionable under subsection (e)(5).

### a. The allegation that the FBI did not provide victims' assistance to plaintiffs does not state a claim under subsection (e)(5)

With respect to the first alleged determination, a claim that the FBI did not provide victims' assistance services cannot serve as a legally cognizable basis for a Privacy Act claim under subsection (e)(5).   As noted above, subsection (g)(1)(C) of the Privacy Act permits a damages remedy under subsection (e)(5) when an agency fails to maintain a record about an individual that is accurate and relevant in order "to assure fairness in any determination relating to . . . rights . . . or benefits to the individual that may be made on the basis of such record . . ."   5 U.S.C. § 552a(g)(1)(C).   Congress, however, has made clear under the Crime Victims' Rights Act, *see* Pub. L. No. 108-405, tit. I (Oct. 30, 2004) (codified at 18 U.S.C. § 3771), that a failure to provide victim assistance cannot form the basis of a damages claim:

> Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages.

18 U.S.C. § 3771(d)(6).   On this basis alone, plaintiffs fail to state a claim under subsection (e)(5) due to the FBI's alleged non-provision of victim assistance.

In addition, plaintiffs fail to plead facts plausibly showing that inaccurate or irrelevant information allegedly maintained by the FBI and DoD resulted in the alleged adverse determinations they complain about.   Thus, for example, plaintiffs allege that the FBI directed Special Agent Humphries to remove a statement from an FBI 302 denying "that he had a sexual relationship with Mrs. Kelley."   Am. Compl. ¶ 75.   Plaintiffs, however, fail to allege facts indicating how this omission plausibly caused them to be denied victims' assistance.   To begin with, plaintiffs fail to aver how the omission of this denial of sexual relations between Special Agent Humphries and Mrs. Kelley possibly caused the sworn statement to be "inaccurate" in any meaningful sense.   The exclusion of irrelevant information from a record is of course permissible under the Privacy Act and does not make a record inaccurate or incomplete.   Rather, as the Privacy Act Guidelines advise, "[a]gencies must limit their records to those elements of information which clearly bear on the determination(s) for which the records are intended to be used, and assure that all elements necessary to the determinations are present before the determination is made."   40 Fed. Reg. at 28,965.   Without plausible allegations of inaccurate and incomplete statements in an agency record used to make a determination regarding victims' assistance, plaintiffs fail to state a subsection (e)(5) claim.   *See Chambers*, 568 F.3d at 1007 ("Central to a cause of action under subsection (g)(1)(C) is the existence of an adverse agency determination resulting from inaccurate agency records."); *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002); *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (dismissing a claim under subsection (e)(5) where the complaint did not allege any inaccuracy in agency information); *Djenasevic v. Exec. U.S. Attorney's Office*, 579 F. Supp. 2d 129 (D.D.C. 2008) (rejecting claim under subsection (e)(5) where there was no inaccurate, irrelevant, untimely, or incomplete record); *see also Thompson*, 400 F. Supp. 2d. at 19 (explaining

27

that to make out a damages claim under subsection (e)(5), "the alleged adverse determination must result from the inaccuracy of the records, not the mere existence of the records").

Relatedly, the amended complaint fails to allege any plausible causal link, much less proximate causation, between the FBI's the alleged maintenance of any inaccurate, irrelevant, or incomplete records regarding plaintiffs and the FBI's alleged denial of victims' assistance to plaintiffs.   While plaintiffs allege proximate cause in a conclusory fashion, *see* Am. Compl. ¶ 137, that form of pleading does not satisfy the plausibility standard.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1275 (D.C. Cir. 1994); *Nat'l ATM Council, Inc. v. Visa, Inc.*, 922 F. Supp. 2d 73, 79 (D.D.C. 2013).   The amended complaint, for example, does not establish a plausible link between the alleged wrongful denial of victims' assistance and the alleged omission of a statement in Special Agent Humphries' statement in an FBI 302 denying sexual relations with Mrs. Kelley.   The amended complaint similarly fails to link the FBI's alleged collection of email communications between Jill Kelley and Generals Petraeus and Allen to its alleged denial of victims' assistance to both plaintiffs.

### b.   The allegation that the FBI converted plaintiffs into subjects of an investigation does not state a claim under subsection (e)(5)

Plaintiffs' second alleged adverse determination – that the FBI converted them from crime victims into subjects of an investigation – also does not present a cognizable claim.   Deep-rooted policy concerns caution against courts probing the details of the criminal investigatory process:

> The powers of criminal investigation are committed to the Executive branch.   The balance between the Executive and Judicial branches would be profoundly upset if the Judiciary assumed superintendence over the law enforcement activities of the Executive branch upon nothing more than a vague fear or suspicion that its officers will be unfaithful to their oaths or unequal to their responsibility.

*Reporters Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1065 (D.C. Cir. 1978).   Moreover, multiple circuits have acknowledged that "[c]ourts should go very slowly

28

before staking out rules that will deter government agents from the proper performance of their investigative duties." *United States v. Connell*, 960 F.2d 191, 196 (1st Cir. 1992); *see also United States v. Barth*, 990 F.2d 422, 425 (8th Cir. 1993) (same).   And here, to evaluate when, why, and on the basis of what records the FBI allegedly began treating plaintiffs as suspects would do exactly that – it would force the parties and the Court to reconstruct the details of a fast-moving and sensitive law enforcement investigation.   Accordingly, even if plaintiffs' allegation is assumed to be true, *i.e.*, that they were somehow converted to the subjects of an investigation, there is no basis in precedent for concluding that such an allegation, without more, rises to the level of an adverse determination protected by subsection (e)(5) of the Privacy Act.

In addition, the alleged conversion of plaintiffs from victims into the subjects of the investigation fails to allege a plausible proximate causation.   *Cf.* Am. Compl. ¶ 137.   It is quite simply not plausible to conclude that both Jill and Scott Kelley were converted into suspects because Special Agent Humphries omitted a denial of sexual relations with Mrs. Kelley from his FBI 302.   Nor do plaintiffs allege any causal link between the FBI's alleged collection of Jill Kelley's email communications and the alleged determination to convert her and her husband into suspects.

Plaintiffs' claims under subsection (e)(5) with respect to the FBI also fail because they do not account for exceptions to the protection provided by subsection (e)(5).   The FBI has exempted several of its systems of records from the requirements of subsection (e)(5), under the authority provided by subsection (j)(2).   *See* 5 U.S.C. § 552a(j)(2).   The FBI has exempted its Central Records System and several other systems of records from the requirements of subsection (e)(5). *See* 28 C.F.R. § 16.96(a)(1); *see also id.* § 16.96(c)(1), (e)(1), (g)(1), (j)(1), (*l*)(1), (n)(1), (p)(1), (r)(1), (t)(1).   The FBI explains that the Central Records System is exempted from

subsection (e)(5) because law enforcement investigations are dynamic, and strict adherence to the

requirements of subsection (e)(5) would impede the investigatory process:

> [I]n the collection of information for law enforcement purposes it is impossible to determine in advance what information is accurate, relevant, timely and complete. With the passage of time, seemingly irrelevant or untimely information may acquire new significance as further investigation brings new details to light.   The restrictions imposed by subsection (e)(5) would limit the ability of trained investigators and intelligence analysts to exercise their judgment in reporting on investigations and impede the development of criminal intelligence necessary for effective law enforcement.   In addition, because many of these records come from other federal, state, local, joint, foreign, tribal, and international agencies, it is administratively impossible to ensure compliance with this provision.

28 C.F.R. § 16.96(b)(6).   Due to the presence of these exempt systems of records, to state a claim

against the FBI, plaintiffs must allege that the records at issue were maintained by the FBI in a

non-exempt location.   *See Allmon*, 605 F. Supp. 2d at 6 (dismissing a complaint where there was

no allegation that the records at issue were located in a non-exempt system of records); *Arnold*,

524 F. Supp. 2d at 67 (same) *Conklin*, 514 F. Supp. 2d at 6 (same).   Plaintiffs make no such

allegation, and therefore they do not state a claim against the FBI under subsection (e)(5).

### c.   The allegation regarding denial of access privileges to MacDill Air Force Base does not state a claim for relief under subsection (e)(5)

Finally, plaintiffs do not state a claim with respect to their third alleged adverse

determination, *viz.*, that DoD denied Jill Kelley access privileges to MacDill Air Force Base.   *See*

Am. Compl. ¶ 137; *see also id.* ¶ 106.   At the outset, this claim does not extend to Scott Kelley,

because the amended complaint does not allege DoD made any determination regarding him.   Jill

Kelley's denial-of-access claim fails as well.   The amended complaint does not allege that Jill

Kelley can no longer access MacDill Air Force Base; rather it claims the termination of her

privileged access to the base.   *See id.* ¶ 137.   Regardless of the precise nature of Jill Kelley's

ability to access MacDill Air Force Base, nothing in the amended complaint plausibly alleges how

revocation of access privileges to Jill Kelley caused her to incur actual damages, which are limited

to proven pecuniary losses.   *See FAA v. Cooper*, 132 S. Ct. 1441, 1452 (2012) (explaining that the

term "actual damages," as used in the Privacy Act refers to "proven pecuniary loss").

> **D.      Plaintiffs fail to state a claim for maintaining records that describe the exercise of First Amendment rights because any such records would be covered by the law enforcement exception**

Count Four alleges that the FBI and DoD illegally maintained records describing how

plaintiffs exercised their First Amendment rights, such as records of plaintiffs' personal

communications, associations, and friendships.   *See* Am. Compl. ¶¶ 142-48.   Based on those

allegations, plaintiffs sue for a violation of subsection (e)(7) of the Privacy Act, proceeding under

the catch-all civil remedy provisions in subsection (g)(1)(D).   *See* 5 U.S.C. § 552a(g)(1)(D); *see

also Doe v. FBI*, 936 F.2d at 1360 (explaining that a claim under subsection (e)(7) is actionable

only under the catch-all civil remedy provision in subsection (g)(1)(D)).   Plaintiffs' claim fails

because the information allegedly maintained by the FBI and DoD related to authorized law

enforcement activities and would therefore be exempted from subsection (e)(7).

> **1.      Subsection (e)(7) is limited by the law enforcement exception**

Subsection (e)(7) of the Privacy Act generally prohibits federal agencies from maintaining

records that describe how an individual exercises First Amendment rights:

> Each agency that maintains a system of records shall . . . maintain no record
> describing how any individual exercises rights guaranteed by the First Amendment
> unless expressly authorized by statute or by the individual about whom the record is
> maintained or unless pertinent to and within the scope of an authorized law
> enforcement activity.

5 U.S.C. § 552a(e)(7).   The D.C. Circuit has held that subsection (e)(7) applies to records outside

of systems of records.   *See Gerlich*, 711 F.3d at 169 ("The obligations imposed by

subsection (e)(7) are not limited to records maintained in a system of records."); *see also Albright

v. United States*, 631 F.2d 915, 918-19 (D.C. Cir. 1980).

The scope of subsection (e)(7)'s applicability, although broad, is subject to the Privacy Act's law enforcement exception   *See Maydak*, 363 F.3d at 517 ("Although the Privacy Act does not define 'law enforcement activity,' we have interpreted the phrase broadly."); *Sieverding*, 693 F. Supp. 2d at 105.   The exception covers many forms of federal investigations, including information gathered as part of any authorized criminal, intelligence, or administrative investigation.   *See Nagel v. U.S. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 n.3 (D.C. Cir. 1984).   In addition, the exception extends to all persons associated with the investigation – including crime victims – and not merely to the target of the investigation.   *See J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 602 (D.C. Cir. 1996).   Moreover, by its plain text, the law enforcement exception is not limited to only law enforcement investigations, but rather it encompasses any "authorized law enforcement activity."   *See* 5 U.S.C. § 552a(e)(7); *J. Roderick MacArthur Found.*, 102 F.3d at 602.   Accordingly, the law enforcement exception extends to matters that are not under active investigation and to matters that are not a current law enforcement necessity.   *See J. Roderick MacArthur Found.*, 102 F.3d at 602, 603.

### 2.     The law enforcement exception precludes plaintiffs' claim under subsection (e)(7)

Even assuming the truth of plaintiffs' allegation that either the FBI or DoD maintained records describing how plaintiffs exercised their First Amendment rights, any such records would come within the law enforcement exception.   According to the amended complaint, both the FBI and DoD were engaged in law enforcement activity that implicated Jill Kelley's emails.   For instance, plaintiffs allege that the FBI was investigating Jill Kelley's report that she was receiving cyberstalking threats through email.   *See, e.g.,* Am. Compl. ¶¶ 90, 91.   The amended complaint also alleges that DoD was investigating whether General Allen had an inappropriate relationship with Jill Kelley.   *See, e.g., id.* ¶¶ 84, 89, 117.   Based on those allegations, the collection of

information regarding Jill Kelley's email correspondence was related to either the FBI's cyberstalking investigation or the DoD's investigation of General Allen's conduct.   Criminal investigations and administrative investigations constitute authorized law enforcement activities for purposes of the law enforcement exception.   *See Nagel*, 725 F.2d at 1441 n.3.   Therefore, any collection and maintenance of information for those investigations would be well within the law enforcement exception.   *See Doe v. FBI*, 936 F.2d at 1361 (finding no violation of subsection (e)(7) where the records at issue constituted "the underlying investigative records in the FBI's files"); *Scott v. Conley*, -- F. Supp. 2d --, 2013 WL 1409310, at *16 (D.D.C. Apr. 9, 2013) (requiring allegations that an agency had no valid law enforcement reason for the records as a prerequisite to stating a claim under subsection (e)(7)).   Accordingly, Count Four should be dismissed for failure to state a claim for relief.

Attempting to avoid the law enforcement exception, plaintiffs' amended complaint adds a general statement that the records at issue "were not pertinent to, and were outside of the scope of, authorized law enforcement activity."   Am. Compl. ¶ 143.   But that conclusory and formulaic statement does not cure the pleading deficiencies in Count Four to satisfy the plausibility standard. *See Twombly*, 550 U.S. at 555; *Kowal*, 16 F.3d at 1275; *Nat'l ATM Council*, 922 F. Supp. 2d at 79. A plaintiff's mere assertion that the records at issue are outside the scope of authorized law enforcement activity does not thereby transform law enforcement records into something else. Were it otherwise, any plaintiff could by use of this formulaic response avoid the law enforcement limitation on the scope of subsection (e)(7) as intended by Congress.   Moreover, other paragraphs in the amended complaint contradict plaintiffs' bare-bones denial of a law enforcement purpose by acknowledging that an email to Jill Kelley's personal email account prompted her to contact law enforcement, and that General Allen's email communications were officially investigated for

being potentially inappropriate.   *See* Am. Compl. ¶¶ 44, 53, 83.   In short, the pleading standards

do not permit a conclusory disclaiming clause, in contradiction of other allegations, to be the basis

on which plaintiffs can seek relief under section (e)(7).   *See Twombly*, 550 U.S. at 555; *Kowal*,

16 F.3d at 1275; *Nat'l ATM Council*, 922 F. Supp. 2d at 79.   Count Four should be dismissed.

> **E.**      **Plaintiffs do not state a claim for failing to assure accuracy and completeness
> of records prior to their alleged dissemination**

In Count Five, plaintiffs allege that the FBI, DoD, and the State Department violated

subsection (e)(6) of the Privacy Act by disseminating agency records without making reasonable

efforts to assure the accuracy, completeness, timeliness, and relevancy of those records for agency

purposes.   *See* Am. Compl. ¶¶ 149-59.

Subsection (e)(6) requires that agencies take reasonable efforts to assure the accuracy,

completeness, timeliness, and relevance of agency records prior to their dissemination:

> Each agency that maintains a system of records shall . . . prior to disseminating any
> record about an individual to any person other than an agency, unless the
> dissemination is made pursuant to subsection (b)(2) of this section, make
> reasonable efforts to assure that such records are accurate, complete, timely, and
> relevant for agency purposes.

5 U.S.C. § 552a(e)(6).   Subsection (e)(6) applies only to records contained within a system of

records.   *See Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 50, 55 (D.D.C. 2008); *see also*

*McCready v. Nicholson*, 465 F.3d at 12, 12 n.6.   Based on those principles, a violation of

subsection (e)(6) consists of three elements:   (i) dissemination of a record about the plaintiff to a

person other than an agency or a FOIA requestor; (ii) retrieved from a system of records;

(iii) without having undertaken reasonable efforts to assure that the record is accurate, complete,

timely, and relevant for agency purposes.   *See* 5 U.S.C. § 552a(e)(6); *McCready*, 465 F.3d at 8

n.4 (clarifying that subsection (e)(6) does not apply to disseminations made pursuant to the

Freedom of Information Act); *Thompson*, 400 F. Supp. 2d. at 21 (explaining that subsection (e)(6)

"does not apply when information is disclosed within the agency or to another agency"); *see generally* 40 Fed. Reg. at 28,965 (acknowledging exceptions for dissemination to another agency or to a FOIA requestor).   A civil action under subsection (e)(6) also requires the four elements identified above for the catch-all civil remedy provision:   (i) intentional and willful agency action; (ii) that proximately caused; (iii) an adverse effect on an individual; and (iv) that resulted in actual damages.   *See* 5 U.S.C. § 552a(g)(a)(D), (g)(4); *see also Doe v. Chao*, 540 U.S. at 616 (requiring actual damages to recover); *Maydak*, 630 F.3d at 179-80 (explaining the burden of proof on plaintiffs for the intentional and willful requirement); *Dickson*, 828 F.2d at 37 ("The adverse effect must be proximately caused by the Privacy Act violation."); *Albright*, 732 F.2d at 189 ("The Act does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions.").   Plaintiffs fail to allege several of those elements.

 At the outset, plaintiffs do not allege that the FBI, DoD, or the State Department disseminated any record regarding Scott Kelley, much less a record about Scott Kelley that was retrieved from a system of records and that was not reasonably assured to be accurate, complete, and relevant.   Therefore Scott Kelley's claims under Count Five should be dismissed.

With respect to Jill Kelley, the amended complaint fails to plausibly allege an impermissible retrieval and dissemination of a record about her by the FBI or DoD.   With respect to the FBI, plaintiffs first allege that it "dissuaded an FBI agent from providing a complete and accurate record on Mrs. Kelley."   Am. Compl. ¶ 152.   But the amended complaint does not allege that that record or any of its contents were retrieved from a system of records and disseminated outside of the FBI.   Without such an allegation, plaintiffs do not satisfy the dissemination element required for a claim under subsection (e)(6).   *See Thompson*,

400 F. Supp. 2d. at 22 (rejecting a subsection (e)(6) claim where there was no dissemination outside of a federal agency).   Plaintiffs next rely on the allegation that "government leaks attributed to law enforcement and defense department officials included gross speculation, misstatements, and intentionally salacious hyberbole without regard to the truth or relevancy of the leaks."   Am Compl. ¶ 153.   But that allegation of generalized leaks does not suggest that an agency "record" about Jill Kelley was retrieved from a system of records and disseminated. Whatever alleged disseminations plaintiffs seek to attribute to the FBI or DoD would be actionable under the Privacy Act only if they involved a record about Jill Kelley that was retrieved from a protected system of records.   Yet, as explained above with respect to Count One, plaintiffs' allegations with respect to Count Five do not satisfy the retrieval rule.

As amended, the thrust of Count Five is against the State Department for statements made at press conferences on November 13 and November 15, 2012, regarding Jill Kelley.   Plaintiffs claim that in answering questions from the press, the State Department Spokesperson, Mark Toner, made inaccurate and incomplete statements regarding Jill Kelley and the State Department. *See* Am. Compl. ¶¶ 6, 86, 87, 154.   As evidenced from both the transcripts and the video recordings of those press conferences,[7] Mr. Toner stated that Jill Kelley was not employed by the State Department and had no formal affiliation with the State Department.   He also responded to a

---

[7] Because those press conferences are referenced in the amended complaint, their substance may be considered in evaluating whether plaintiffs state a claim for relief.   *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Ponder v. Chase Home Fin., LLC*, 865 F. Supp. 2d 13, 19 n.4 (D.D.C. 2012).   Those transcripts are available at http://www.state.gov/r/pa/prs/dpb/2012/11/200477.htm (for November 13) and http://www.state.gov/r/pa/prs/dpb/2012/11/200598.htm (for November 15) and relevant excerpts are reprinted in Exhibits 2 and 3.   Furthermore, the video-recording of the press conference is available from the State Department's website and is available at http://video.state.gov/en/video/1967117621001 (for November 13, the segment between 19:10 and 21:25) and http://video.state.gov/en/video/1971896418001 (for November 15 between 29:09 and 32:00).

question by explaining that the State Department had "no direct role" in Jill Kelley's appointment as an Honorary Consul.   Mr. Toner's statements do not support a claim under subsection (e)(6) of the Privacy Act.

First, Mr. Toner's statements were not inaccurate, incomplete, or irrelevant for agency purposes.   *See* 5 U.S.C. § 552a(e)(6).   Mr. Toner did not deny that Jill Kelley served as an Honorary Consul for the Republic of South Korea.   He simply addressed the relevant question "for agency purposes," which was whether Jill Kelley had any formal affiliation with the State Department.   At the time of Mr. Toner's statement, Jill Kelley was an Honorary Consul for the Republic of Korea in Florida.   She was not employed by the State Department and had no formal affiliation with the State Department, nor did the State Department have a direct role in her Honorary Consul appointment.   Jill Kelley was appointed Honorary Consul by the Republic of Korea, and not by the State Department or any other United States governmental entity.   *See* Am. Compl. ¶ 17 (alleging that "in August 2012 the Government of the Republic of Korea appointed Mrs. Kelley as Honorary Consul under the Vienna Convention on Consular Affairs of 1963, Art. 10"); *see also id.* ¶¶ 33-34.

Plaintiffs allege that Mr. Toner's statements were inaccurate because the State Department engaged in a security check and approval process for Jill Kelley's Honorary Consul position and because the State Department accepted her accreditation and issued her an Honorary Consul identification card.   *See* Am. Compl. ¶¶ 5, 17, 36, 37.   But as explained in a Circular Diplomatic Note, the State Department "is not in a position to conduct background checks or provide analysis of a person's qualifications or suitability to serve as an honorary consular officer."   U.S. Dep't of State, Circular Diplomatic Note at 3 (Aug. 6, 2003) (hereafter "Circular Diplomatic Note") (available online at http://www.state.gov/documents/organization/124944.pdf).   Rather, the State

Department "trusts that the sending states, through their embassies, have completely reviewed the credentials of all persons nominated to represent their governments."   *Id.* at 3-4.   Any supplemental review conducted by the State Department, such as a criminal background check, does not render Honorary Consuls, selected by foreign countries to represent them in the United States, formal affiliates of the United States government.   Nor does the State Department's approval of a request to establish an honorary consular post constitute a direct role in foreign governments' appointment of Honorary Consuls or suggest that Honorary Consuls are formally affiliated with the State Department.   Rather, the State Department's approval is consistent with the Vienna Convention on Consular Relations, which provides that a consular post may be established only with the consent of the receiving State (here the United States) and that the classification of the post as well as its district is "subject to the approval of the receiving State." Vienna Convention on Consular Relations, art. 4; *see also id.* art. 10 (appointment and admission of heads of consular posts).   More specifically, the State Department's review process for the establishment of consular posts headed by honorary consular officers seeks to ensure that Honorary Consuls "come under the supervision of, and are accountable to, the governments which they represent."   Circular Diplomatic Note at 1.   Plaintiffs' argument to the contrary would suggest that all diplomats and consuls from foreign countries, even those with whom the United States disagrees regularly, would be deemed to have a "formal affiliation with the State Department," and the State Department should be viewed as having a "direct role" in their selection and appointment, all of which is contrary to fact and longstanding practice.   In short, Mr. Toner's statements were not inaccurate, incomplete, and irrelevant for agency purposes.

Plaintiffs also fail to allege that Mr. Toner's statement was derived from a record about Jill Kelley that was retrieved from a Privacy Act protected systems of records.   As explained in above

with respect to Count One, without satisfying the retrieval rule, which is applicable to subsection (e)(6) claims, Jill Kelley states no claim against the State Department.

Nor does the amended complaint plausibly allege that Mr. Toner's statements were made with the willful-and-intentional mental state required to state a claim under subsection (g)(1)(D). Plaintiffs offer a conclusory allegation of intentional conduct, but it is clear that such a recitation fails the plausibility standard. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (requiring factual allegations – and not merely conclusory statements sufficient to plausibly suggest an impermissible mental state) *with* Am. Compl. ¶ 158 ("Upon information and belief, the FBI, DOD, and the State Department, as well as their employees and officers, acted intentionally and/or willfully in violation of the Kelleys' privacy rights."), and *id.* ¶ 6 (alleging that Mr. Toner "willfully misinformed the public about Mrs. Kelley's diplomatic status").

In elaboration of that pleading shortcoming, the Privacy Act permits actual damages only for "intentional or willful" violations of certain of its prohibitions. *See* 5 U.S.C. § 552a(g)(4); *see also Sussman*, 494 F.3d at 1122. That mental state standard is regarded as a term of art, *see White v. OPM*, 840 F.2d 85, 87 (D.C. Cir. 1988), and has been interpreted as requiring a very high standard of intent. It has been described as requiring conduct "so patently egregious and unlawful" that anyone should have known it to be unlawful. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quotations omitted). In essence, it demands a flagrant disregard for others' rights. *Albright*, 732 F.2d at 189-90. Yet the transcripts and the video-recordings provide no basis whatsoever to assert that Mr. Toner' possessed this mindset. His conduct was not in flagrant disregard for Jill Kelley's rights – he answered questions concisely in a truthful and accurate manner. His actions do not subject the State Department to liability under the Privacy Act.

### F.      Plaintiffs do not state a claim for relief against the FBI or DoD for failure to establish Privacy Act safeguards

In Count Six, plaintiffs allege that FBI and DoD violated subsection (e)(10) of the Privacy Act by failing to establish safeguards to ensure the security and confidentiality of records.   *See* Compl. ¶¶ 160-69.   With respect to this Count, plaintiffs' allegations are based on "information and belief," a convention not recognized in the rules of civil procedure.   *Cf.* Fed. R. Civ. P. 8(a) (setting forth the standards for pleading a claim).   While "information and belief" allegations are sometimes permitted where additional factual allegations support the reliability or the plausibility of the professed information and belief allegations, *see, e.g., Jefferson v. Collins*, 905 F. Supp. 2d 269, 288-89 (D.D.C. 2012); *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 59 n.57 (D.D.C. 2012), here, the FBI and DoD's Privacy Act safeguards are published, and are properly matters within judicial notice.   Thus, information and belief allegations are insufficient here, where, contrary to those allegations, it is a matter of public record that the FBI and DoD have established Privacy Act safeguards.

Subsection (e)(10) requires that agencies establish safeguards for Privacy Act systems of records.   Specifically, subsection (e)(10) requires each agency that maintains a system of records to

> establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.

5 U.S.C. § 552a(e)(10).   As its text indicates, subsection (e)(10) imposes an obligation to *establish safeguards*, but not to *safeguard* all Privacy Act protected information – other more specific provisions of the Privacy Act govern the safeguarding of Privacy Act protected information, such as the disclosure prohibition in subsection (b).   The requirement to establish

safeguards in subsection (e)(10) applies only to an agency's systems of records, and not to every

record that an agency maintains.   *See Gerlich*, 711 F.3d at 167; *Maydak*, 363 F.3d at 518

(explaining that the obligation to implement Privacy Act safeguards in subsection (e)(10) does not

apply to all records, but only to systems of records); *see also* 40 Fed. Reg. at 28,966.   And where

an agency has preexisting safeguards in place, a plaintiff must identify a safeguard that the agency

should have established but did not.   *See Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 43

(D.D.C. 2009); *Chambers*, 568 F.3d at 1007 n.7.   In addition, the Privacy Act does not provide a

specific civil claim for damages resulting from a violation of subsection (e)(10), and therefore

plaintiffs' claim for failing to establish safeguards can proceed only under the Privacy Act's

catch-all provision, which requires an intentional and willful agency action.   *See* 5 U.S.C.

§ 552a(g)(1)(D) & (g)(4).

Measured against these standards, plaintiffs fail to state a claim for a violation of

subsection (e)(10).   Both the FBI and DoD have established Privacy Act safeguards that are

matters of public record.   For instance, the Department of Justice has promulgated regulations

mandating the implementation of security requirements for systems of records by all of its

components, including the FBI:

(a)     Each component shall establish administrative and physical controls to
prevent unauthorized access to its systems of records, to prevent
unauthorized disclosure of records, and to prevent physical damage to or
destruction of records.   The stringency of these controls shall correspond
to the sensitivity of the records that the controls protect.   At a minimum,
each component's administrative and physical controls shall ensure that:

(1)     Records are protected from public view;

(2)     The area in which records are kept is supervised during
business hours to prevent unauthorized persons from having
access to them;

(3)     Records are inaccessible to unauthorized persons outside of
business hours; and

41

(4)    Records are not disclosed to unauthorized persons or under unauthorized circumstances in either oral or written form.

(b)    Each component shall have procedures that restrict access to records to only those individuals within the Department who must have access to those records in order to perform their duties and that prevent inadvertent disclosure of records.

28 C.F.R. § 16.51; *see also id.* § 16.54 (setting forth employee standards of conduct with respect to information protected by the Privacy Act).   Courts in this District have repeatedly acknowledged the adequacy of these safeguards in rejecting claims that the FBI failed to establish Privacy Act safeguards.   *See, e.g., Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009); *Krieger*, 529 F. Supp. 2d at 54-55.   In addition to the regulatory safeguards, each of the FBI's systems of records has specific safeguarding provisions published in the Federal Register.   For instance, the FBI's system of records for investigative, personnel, applicant, administrative, and general files – known as the Central Records System – contains additional published safeguards as well:

Records are maintained in a restricted area and are accessed only by agency personnel.   All FBI employees receive a complete background investigation prior to being hired.   All employees are cautioned about divulging confidential information or any information contained in FBI files.   Failure to abide by this provision violates Department of Justice regulations and may violate certain statutes providing maximum severe penalties of a ten thousand dollar fine or 10 years imprisonment or both.   Employees who resign or retire are also cautioned about divulging information acquired in the jobs.   Registered mail is used to transmit routine hard copy records between field offices.   Highly classified records are hand carried by Special Agents or personnel of the Armed Forces Courier Service.   Highly classified or sensitive privacy information, which is electronically transmitted between field offices, is transmitted in encrypted form to prevent interception and interpretation.   Information transmitted in teletype form is placed in the main files of both the receiving and transmitting field offices. Field offices involved in certain complicated investigative matters may be provided with on-line access to the duplicative computerized information which is maintained for them on disk storage in the FBI Computer Center in Washington, DC, and this computerized data is also transmitted in encrypted form.

63 Fed. Reg. 8659, 8683 (Feb. 20, 1998).   Through measures such as these, the FBI has

established safeguards for information protected by the Privacy Act.

DoD has also enacted comprehensive Privacy Act safeguards.   DoD has established a

Defense Privacy Office whose responsibilities include ensuring that "[a]ppropriate procedures and

safeguards shall be developed, implemented, and maintained to protect personal information when

it is stored in either a manual and/or automated system of records or transferred by electronic or

non-electronic means."   *See* DoD Directive No. 5400.11 at § E4.4.2.9.2 (May 8, 2007, as

amended Sept. 1, 2011) (available at http://www.dtic.mil/whs/directives/corres/pdf/540011p.pdf).

In addition, DoD has promulgated regulations that impose responsibility on each component for

the protection of Privacy Act records:

> C1.4.1.    General Responsibilities.   DoD Components shall establish appropriate
> administrative, technical and physical safeguards to ensure that the records in each
> system of records are protected from unauthorized access, alteration, or disclosure
> and that their confidentiality is preserved and protected.   Records shall be
> protected against reasonably anticipated threats or hazards that could result in
> substantial harm, embarrassment, inconvenience, or unfairness to any individual
> about whom information is kept.

> C1.4.2.    Minimum Standards

> C1.4.2.1.  Tailor system safeguards to conform to the type of records in the system,
> the sensitivity of the personal information stored, the storage medium used and, to a
> degree, the number of records maintained.

> C1.4.2.2.  Treat all unclassified records that contain personal information that
> normally would be withheld from the public under Freedom of Information
> Exemption Numbers 6 and 7, chapter 3 of Reference (d) as "For Official Use Only
> (FOUO)," and safeguard them accordingly, in accordance with DoD 5200.1-R
> (Reference (h)), even if they are not actually marked "FOUO."

> C1.4.2.3.  Personal information that does not meet the criteria discussed in
> paragraph C1.4.2.2 of this Chapter shall be accorded protection commensurate with
> the nature and type of information involved.

C1.4.2.4.  Special administrative, physical, and technical procedures are required to protect data that is stored or processed in an IT system to protect against threats unique to an automated environment.   See Appendix 1.

C1.4.2.5.  Tailor safeguards specifically to the vulnerabilities of the system.

*See* DoD Privacy Program, DoD 5400.11-R, at C1.4 (May 14, 2007) (available online at

www.dtic.mil/whs/directives/corres/pdf/540011r.pdf).   DoD has also implemented safeguards

for its thousand-plus systems of records.   *See*

http://dpclo.defense.gov/Privacy/SORNsIndex/DODComponentNotices.aspx (listing system of

records notice for DoD components).   For instance, DoD has published safeguards for a system of

records within the Inspector General's Office – referred to as CIG-15 – which contains

information related to administrative investigations of senior officials related to violations of laws,

rules, or regulations or mismanagement.   Those safeguards limit the persons who may access the

records and provide physical and technical protections:

> Records are maintained in locked rooms accessible only to Office of the Deputy Inspector General for Investigations personnel having official need-to-know and [the] electronic data system is password protected.

73 Fed. Reg. 61,085, 61,089 (Oct. 15, 2008).   These measures demonstrate that DoD has

established Privacy Act safeguards.   Consequently, plaintiffs fail to state a claim for a violation of

subsection (e)(10).

In ignoring these published safeguards, plaintiffs seemingly advance a strict liability

theory for the release of information protected by the Privacy Act.   In essence, plaintiffs claim

that any alleged leak indicates that the FBI and DoD's safeguards were not adequate.   That

reading fails first because it is inconsistent with the requirements of subsection (e)(10), which

requires safeguards only to "anticipated threats or hazards."   *See* 5 U.S.C. § 552a(e)(10).

Secondly, plaintiffs' allegations fall short because the requirement to establish safeguards is

actionable only if an agency acted intentionally or willfully in not establishing those safeguards.

*See id.* § 552a(g)(1)(D).   To satisfy that element, plaintiffs would have to allege facts that the FBI

and DoD acted with flagrant disregard for individuals' privacy rights in not establishing certain

Privacy Act safeguards.   *See Albright*, 732 F.2d at 189; *see also Maydak*, 630 F.3d at 180.   To do

so is "a high standard, requiring a showing of 'something greater than gross negligence' on the

agency's part."   *Djenasevic*, 579 F. Supp. 2d at 136 (quoting *Tijerina v. Walters*, 821 F.2d 789,

799 (D.C. Cir. 1987)); *see also Hurt v. D.C. Court Servs. & Offender Supervision Agency*,

827 F. Supp. 2d 16, 20 (D.D.C. 2011) (characterizing the Privacy Act's intentional and willful

element as "a high hurdle to clear").   Under that standard, a plaintiff must allege agency action

that is "so 'patently egregious and unlawful' that anyone undertaking the conduct should have

known it 'unlawful.'" *Laningham*, 813 F.2d at 1242 (D.C.Cir.1987) (quoting *Wisdom v. Dep't of*

*Hous. & Urban Dev.*, 713 F.2d 422, 425 (8th Cir.1983)).   Where a complaint lacks such

allegations, it should be dismissed.   *See, e.g., Scott v. Conley*, -- F. Supp. 2d --, 2013 WL

1409310, at *16 (D.D.C. Apr. 9, 2013) (dismissing a Privacy Act claim for damages where the

allegations did not satisfy the intentional and willful standard); *McIntyre v. Fulwood*,

892 F. Supp. 2d 209, 218 (D.D.C. 2012) (same); *Djenasevic*, 579 F. Supp. 2d at 136 (same).   The

amended complaint does not meet that standard because plaintiffs do not provide any facts

suggesting that the FBI and DoD – despite promulgating numerous Privacy Act safeguards –

flagrantly disregarded privacy rights by not establishing an (unspecified) safeguard.   On that basis

as well, Count Six should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Counts One through Six of the amended complaint should be

dismissed for a failure to state a claim for relief, and Counts Seven, Eight, and Eleven through

Fourteen should be dismissed for a lack of subject matter jurisdiction.

February 28, 2014                                        Respectfully Submitted,

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director


  /s/   *Peter J. Phipps*
PETER J. PHIPPS (DC Bar #502904)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov

Mailing Address:
P.O. Box 883 Ben Franklin Station
Washington, DC 20044

Courier Address:
20 Massachusetts Ave., NW
Washington, DC 20001

*Attorneys for Defendants*