# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GILBERTE JILL KELLEY** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 13-cv-825 (ABJ)** |
| **THE FEDERAL BUREAU OF INVESTIGATION** *et al.*, | |
| **Defendants.** | |

## MOTION TO DISMISS BY DEFENDANTS
## SEAN JOYCE, STEVEN IBISON, AND ADAM MALONE

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Sean Joyce, a former

Deputy Director of the FBI, Steven Ibison, a former Special Agent in Charge of the FBI's Tampa,

Florida Office, and Adam Malone, a FBI Special Agent, move to dismiss Counts Nine and Ten of

plaintiffs' amended complaint, ECF No. 19, for failure to state a claim upon which relief can be

granted.   Points and authorities in support of those defendants' motion to dismiss are presented in

the attached Memorandum in Support.

February 28, 2014

Respectfully Submitted,

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director


  /s/   *Peter J. Phipps*
PETER J. PHIPPS (DC Bar #502904)
Senior Trial Counsel
U.S. Department of Justice, Civil Division

Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov

<u>Mailing Address:</u>
P.O. Box 883 Ben Franklin Station
Washington, DC 20044

<u>Courier Address:</u>
20 Massachusetts Ave., NW
Washington, DC 20001

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GILBERTE JILL KELLEY** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | Civil Action No. 13-cv-825 (ABJ) |
| **THE FEDERAL BUREAU OF INVESTIGATION** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS**
**SEAN JOYCE, STEVEN IBISON, AND ADAM MALONE**

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

PETER J. PHIPPS
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov

# TABLE OF CONTENTS

**T**ITLE                                                                                                                           **P**AGE

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND....................................................................................................3

ARGUMENT ...........................................................................................................................5

I.  Plaintiffs fail to state claims on which relief can be granted in Counts Nine
and Ten......................................................................................................................5

    A.  The amended complaint does not establish that any of the *Bivens*
defendants, through their own individual actions, violated the
Fourth Amendment. ...................................................................................6

        1.  The allegations relating specifically to Sean Joyce fail to set
forth a claim on which relief can be granted...................................8

        2.  The allegations relating specifically to Steven Ibison fail to
set forth a claim on which relief can be granted. ...........................8

        3.  The allegations relating specifically to Adam Malone fail to
set forth a claim on which relief can be granted. ...........................9

    B.  The amended complaint does not allege the personal involvement of
the *Bivens* defendants in any form of gender discrimination....................10

    C.  The claim for the denial of victims' assistance in Count Ten is
implausible and should be dismissed..........................................................13

II.  Plaintiffs' *Bivens* Claims are precluded as a matter of law. ..................................14

    A.  No *Bivens* action should be inferred for Count Nine................................15

    B.  No *Bivens* remedy should be inferred for Count Ten. ..............................17

        1.  A *Bivens* remedy has not been previously created in the
contexts of the claims such as those in Count Ten, and it
should not be inferred here. ...........................................................17

        2.  Plaintiffs' claims of the denial of victims' assistance should
not be recognized through a *Bivens* remedy. .................................19

III.  The doctrine of qualified immunity shields the *Bivens* defendants from
plaintiffs' constitutional claims.............................................................................21

    A.  Defendants are entitled to qualified immunity against plaintiffs'
Fourth Amendment claim asserted in Count Nine because plaintiffs
do not have a clearly established expectation of privacy in stored
electronic communications, such as remotely stored emails. ....................23

    B.  Qualified immunity should be granted with respect to Count Ten
because there is not a clearly established Fifth Amendment right to
victims' assistance or gender-balanced media reporting. ..........................25

CONCLUSION......................................................................................................................26

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) ................................................................................... 18

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ............................................................................ 2, 21, 22, 23

*Anderson v. Gates*,
    2013 WL 6355385 (D.D.C. Dec. 6, 2013) ................................................................. 6

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ..................................................................................... 18

*Armbruster v. Frost*,
    2013 WL 4505272 (D.D.C. Aug. 26, 2013) ............................................................. 22

*Ashcroft v. al-Kidd*,
    131 S. Ct. 2074 (2011) .............................................................................. 22, 23, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... *passim*

*Bame v. Dillard*,
    637 F.3d 380, (D.C. Cir. 2011) .......................................................................... 22, 23

*Barr v. Matteo*,
    360 U.S. 564 (1959) ................................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 5, 12

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ........................................................................................... 14, 17

*Bush v. Lucas*,
    462 U.S. 367 (1983) ...................................................................... 14, 15, 20, 21

*Califano v. Webster*,
    430 U.S 313 (1977) ................................................................................................. 10

*Carlson v. Green*,
    446 U.S. 14 (1980) ................................................................................................... 18

*City of Ontario, Calif. v. Quon*,
    560 U.S. 746 (2010) ................................................................................................. 25

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) ....................................................................................... 15, 18, 20

*Craig v. Boren*,
    429 U.S. 190 (1976) ................................................................................................. 10

*Davis v. Billington*,
    681 F.3d 377 (D.C. Cir. 2012) ..................................................................... 1, 15, 16, 18

*Davis v. Passman,*
 442 U.S. 228 (1979) ............................................................................................. 18

*Doe v. Rumsfeld,*
 683 F.3d 390 (D.C. Cir. 2012) ............................................................................. 18

*Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.,*
 566 F.2d 289 (D.C. Cir. 1977) ............................................................................. 19

*Gonzalez v. Holder,*
 763 F. Supp. 2d 145 (D.D.C. 2011) ...................................................................... 16

*Halim v. Donovan,*
 951 F. Supp. 2d 201, (D.D.C. 2013) ...................................................................... 6

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982) ............................................................................................. 22

*Harris v. Fulwood,*
 2013 WL 5824422 (D.D.C. Oct. 30, 2013) ........................................................... 1

*Hui v. Castaneda,*
 559 U.S. 799 (2010) ............................................................................... 16, 17, 18

*Hunter v. Bryant,*
 502 U.S. 224 (1991) ............................................................................................. 21

*Hurt v. Lappin,*
 729 F. Supp. 2d 186 (D.D.C. 2010) ...................................................................... 6

*In re Naval Chaplaincy,*
 738 F.3d 425 (D.C. Cir. 2013) ............................................................................. 10

*Ingram v. Faruque,*
 728 F.3d 1239 (10th Cir. 2013) ........................................................................... 16

*Int'l Action Ctr. v. United States,*
 365 F.3d 20 (D.C. Cir. 2004) ............................................................................... 22

*Jackson v. Donovan,*
 844 F. Supp. 2d 74 (D.D.C. 2012) ........................................................................ 6

*Johnson v. Gov't of the Dist. of Columbia,*
 734 F.3d 1194 (D.C. Cir. 2013) ........................................................................... 24

*Klay v. Panetta,*
 924 F. Supp. 2d 8 (D.D.C. 2013) ......................................................................... 18

*Kowal v. MCI Commc'ns Corp., Inc.,*
 16 F.3d 1271 (D.C. Cir. 1994) ............................................................................... 5

*M.E.S., Inc. v. Snell,*
 712 F.3d 666 (2d Cir. 2013) ................................................................................ 16

*Malley v. Briggs,*
 475 U.S. 335 (1986) ............................................................................................. 23

*Minneci v. Pollard*,
   132 S. Ct. 617 (2012) ........................................................................................... 18

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ............................................................................................ 21

*Nat'l ATM Council, Inc. v. Visa, Inc.*,
   922 F. Supp. 2d 73 (D.D.C. 2013) ...................................................................... 5

*Pearson v, Callahan*,
   555 U.S. 223 (2009) ................................................................................. 22, 23, 24

*Rehberg v. Paulk*,
   611 F.3d 828 (11th Cir. 2010) ........................................................................... 24

*Reiver v. District of Columbia*,
   925 F. Supp. 2d 1 (D.D.C. 2013) ...................................................................... 23

*Roberts v. United States*,
   2014 WL 259661 (D.C. Cir. Jan. 24, 2014) ................................................. 10, 11

*Rollins v. Wackenhut Servs., Inc.*,
   703 F.3d 122 (D.C. Cir. 2012) ............................................................................. 5

*Sanchez-Espinoza v. Reagan*,
   770 F.2d 202 (D.C. Cir. 1985) ..................................................................... 14, 21

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................................................ 22

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988) ..................................................................................... 14, 18

*Simpkins v. District of Columbia*,
   108 F.3d 366 (D.C. Cir. 1997) ............................................................................. 2

*Smith v. Maryland*,
   442 U.S. 735 (1979) ............................................................................................ 24

*Spagnola v. Mathis*,
   859 F.2d 223 (D.C. Cir. 1988) ........................................................................... 15

*Stanton v. Sims*,
   134 S. Ct. 3 (2013) .............................................................................................. 25

*Staples v. United States*,
   948 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................ 2

*United States v. Armstrong*,
   517 U.S. 456 (1996) ............................................................................................ 26

*United States v. Miller*,
   425 U.S. 435 (1976) ............................................................................................ 24

*United States v. Warshak*,
   631 F.3d 266 (6th Cir. 2010) ............................................................................. 24

*Village of Arlington Heights v. Metropolitan Housing Development Corporation*,
    429 U.S. 252 (1977) ................................................................................................ 10, 11, 12

*Wilkie v. Robbins*,
    551 U.S. 537 (2007) .............................................................................................................. 14

*Williamson v. Cox*,
    952 F. Supp. 2d 176 (D.D.C. 2013) .................................................................................... 22

*Wilson v. Layne*,
    526 U.S. 603 (1999) ........................................................................................................ 23, 24

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ............................................................................................. 15

**Federal Statutes**

18 U.S.C. § 2703 ....................................................................................................................... 15, 16

18 U.S.C. § 2712 ....................................................................................................................... 15, 17

18 U.S.C. § 3771 ............................................................................................................................. 20

28 U.S.C. § 2679 ............................................................................................................................... 5

38 U.S.C. § 7316(a)(1) .................................................................................................................... 16

41 U.S.C. §§ 7101-09 ..................................................................................................................... 16

42 U.S.C. § 233(a) .......................................................................................................................... 16

42 U.S.C. § 10604(e) ...................................................................................................................... 21

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 3, 5

## INTRODUCTION

In their amended complaint, plaintiffs bring two *Bivens* claims (Counts Nine and Ten) against three current and former FBI officials for alleged constitutional violations.   Those three individual-capacity defendants, from whom plaintiffs demand damages, are Sean M. Joyce, a former Deputy Director of the FBI; Steven E. Ibison, a former Special Agent in Charge of the FBI's Tampa Divisional Office; and Adam R. Malone, a current FBI Special Agent (collectively "the *Bivens* defendants").   In Count Nine, plaintiffs sue the *Bivens* defendants under the Fourth Amendment alleging that the FBI conducted searches of their emails without probable cause or judicial approval.   In Count Ten, plaintiffs bring an equal protection claim under the Fifth Amendment alleging that the FBI discriminated against Jill Kelley on the basis of her sex when investigating a report filed by plaintiffs claiming that they were the victims of cyberstalking. More specifically, Jill Kelley alleges that the FBI, in the course of its investigation, unfairly denied victims' assistance to her and her husband, and that the federal government failed to defend her in the press in alleged contrast to its defense of United States Marine Corps General John R. Allen in the press.   As set forth herein, these claims are insufficient to proceed and should be dismissed.[1]

A *Bivens* action is an implied, judicially-created remedy that exists for certain constitutional violations in instances where Congress did not provide for relief.   *See Davis v. Billington*, 681 F.3d 377, 381 (D.C. Cir. 2012).   *Bivens* actions are serious matters for two reasons:   they "are cognizable against the individual only in his personal capacity," and they are actions exclusively for damages, "the payment of which a losing defendant is personally responsible."   *Harris v. Fulwood*, -- F. Supp. 2d --, 2013 WL 5824422, at *3 (D.D.C. Oct. 30,

---

[1] Plaintiffs' non-*Bivens* claims are the subject of a separate motion to dismiss the amended complaint.

2013).   Cognizant of the fact that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), *Bivens* claims are allowed to proceed only under very narrow circumstances, and the D.C. Circuit has made clear that courts have a duty "to stop insubstantial *Bivens* actions in their tracks, and get rid of them."   *Simpkins v. District of Columbia*, 108 F.3d 366, 370 (D.C. Cir. 1997); *see also Staples v. United States*, 948 F. Supp. 2d 1, 3 (D.D.C. 2013).   In this case, plaintiffs' *Bivens* claims are insubstantial on a number of grounds.

Plaintiffs' *Bivens* claims should first be dismissed for failure to present plausible allegations that each of the *Bivens* defendants – through their own individual actions – violated the Constitution, which is a necessary element of a *Bivens* claim.   As demonstrated below, plaintiffs have averred no facts which, even if assumed true, show that any of the *Bivens* defendants personally engaged in any wrongdoing.   This omission is by itself fatal to plaintiffs' *Bivens* claims.

In addition, the judicially-created *Bivens* remedy should not be inferred when (i) a statute precludes additional remedies or (ii) special factors counsel hesitation before imposing personal monetary liability on federal officials.   Here, the Stored Communications Act and the Crime Victims' Protection Act preclude the award of money damages for plaintiffs' constitutional claims through a *Bivens* action.   Relatedly, the comprehensive remedial schemes established by the Stored Communications Act amounts to a special factor, which militates against recognizing the *Bivens* cause of action in the context of plaintiffs' claims in Count Nine.

In addition, the *Bivens* defendants are entitled to qualified immunity, which protects government officials from lawsuits when their alleged conduct does not violate clearly established constitutional rights of which a reasonable person would have known.   As demonstrated below,

the law remains unsettled whether email communications stored on a third-party domain would be entitled to Fourth Amendment protections.   The law is even more unsettled regarding whether either the denial of victims' assistance or the failure to publicly defend someone in the press allegedly based on gender would violate clearly established Fifth Amendment rights.   These uncertainties in the law compel a finding that the *Bivens* defendants are entitled to qualified immunity.

## FACTUAL BACKGROUND

As alleged in the amended complaint,[2] Jill Kelley and Scott Kelley's case arises out of anonymous emails sent in May and June of 2012 which frightened them.   *See* Am. Compl. ¶¶ 39, 42, 53.   The emails indicated that the sender "had been tracking Mrs. Kelley and senior US and foreign officials."   *Id.* ¶ 42.   Out of a concern for their own safety "and the safety of their friends who were among the nation's most senior intelligence and military leaders," plaintiffs reported the potential cyberstalking to the FBI.   *Id.* ¶ 3.   The Kelleys' concerns were heightened "given the terrorism risks faced by CENTCOM leaders," *id.* ¶ 39, and because Jill Kelley was unable to think of anyone "who would be willing to threaten high-ranking government and military officials."   *Id.* ¶ 40.

The FBI responded to the Kelleys' report of potential cyberstalking by conducting an investigation, which required access to the hostile email messages.   *See* Am. Compl. ¶¶ 46-47. Jill Kelley provided limited consent to open a single email in the account, but the Kelleys suspect that the FBI illegally searched more of that account.   *See id.* ¶¶ 46-50, 58.   Also, in communicating with the FBI, Jill Kelley requested information about the status of the FBI's

---

[2] Consistent with the standard of review for challenges to the sufficiency of a complaint's allegations under Rule 12(b)(6), this background recounts the factual allegations from plaintiffs' amended complaint, which are assumed to be true solely for purposes of this motion.

investigation, such as the identity of the potential cyberstalker, and the FBI declined to provide those details.   *See id.* ¶ 54.   Over time, the FBI discovered the identity of the sender of the anonymous emails sender to be Paula Broadwell.   *See id.* ¶ 55.   Based on information learned in the course of its investigation, the FBI provided officials at the Department of Defense with emails between Jill Kelley and United States Marine Corps General John R. Allen.   *See id.* ¶ 5.

In November 2012, the news media reported that the Director of the CIA, General David Petraeus, was resigning from his position.   *See* Am. Compl. ¶ 77.   In the course of the media reporting, it was revealed that General Petraeus had an extramarital affair with Paula Broadwell. *See id.* ¶ 56.   The news media then began reporting that the affair had been discovered "through an investigation of anonymous threatening emails sent to an individual who had filed a complaint with the FBI."   *See id.* ¶ 77.   Shortly thereafter, Jill Kelley's name began appearing in the media as a recipient of hostile emails from Paula Broadwell.   *See id.* ¶ 80 n.17.   Days later, the news media began reporting that there were large numbers of emails between Jill Kelley and General Allen and that the communications were "potentially inappropriate."   *See id.* ¶¶ 83-84.   The news outlets attributed those reports to unnamed governmental sources.   *See id.* ¶¶ 80, 83-84.

Plaintiffs sue the three *Bivens* defendants based on the FBI's investigation of plaintiffs' cyberstalking report and the FBI's alleged handling of information learned in the course of its investigation.   Specifically, plaintiffs claim that the FBI searched email in violation of the Fourth Amendment and that, in the course of its investigation, the FBI discriminated against Jill Kelley on the basis of gender.   Plaintiffs seek damages from the *Bivens* defendants personally on these theories.[3]

---

[3] Plaintiffs sue the FBI, DoD, and the State Department for statutory violations related to their privacy rights as well.   *See* Am. Compl. ¶¶ 113-80.   The amended complaint also alleges claims

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO STATE CLAIMS ON WHICH RELIEF CAN BE GRANTED IN COUNTS NINE AND TEN**

Plaintiffs' *Bivens* claims should be dismissed for a failure to state a claim for relief under Rule 12(b)(6).   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's factual allegations under a plausibility standard.   As articulated by the Supreme Court, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012).   A plaintiff must present "more than a sheer possibility that a defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678.   A complaint will fail if it does not contain "more than labels and conclusions."   *Twombly*, 550 U.S. at 555.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim for relief.   *Iqbal*, 556 U.S. at 678.   Similarly, "a formulaic recitation of the elements of a cause of action will not do."   *Id.*; *see also Kowal v. MCI Commc'ns Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (explaining that Rule 12(b)(6) pleading standard applies only to factual allegations and does not apply to "legal conclusions cast in the form of factual allegations"); *Nat'l ATM Council, Inc. v. Visa, Inc.*, 922 F. Supp. 2d 73, 79 (D.D.C. 2013).

---

against five defendants in their individual capacities (the three *Bivens* defendants and two former DoD officials) for state-law tort claims, which are not addressed here because the Department of Justice has certified that those officials acted within the scope of their official duties.   *See* Certification by Rupa Bhattacharyya (copy attached as Ex. 1 to Defs.' Mot. to Dismiss, ECF No. 34).   Under the Westfall Act, therefore, the United States is substituted as a defendant and answerable for those counts under the Federal Tort Claims Act.   *See* 28 U.S.C. § 2679.

Pursuant to these requirements, plaintiffs in this case must allege specific facts to plausibly show that the *Bivens* defendants – through their own individual actions – engaged in allegedly unconstitutional conduct.   *See Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution" (emphasis added)); *Anderson v. Gates*, -- F. Supp. 2d --, 2013 WL 6355385, at *6 (D.D.C. Dec. 6, 2013) ("[T]o be held liable under *Bivens*, the defendant must have participated personally in the alleged wrongdoing."); *Halim v. Donovan*, 951 F. Supp. 2d 201, 208, (D.D.C. 2013) ("[T]o be held liable under *Bivens*, the official must have participated personally in the alleged wrongdoing."); *Jackson v. Donovan*, 844 F. Supp. 2d 74, 78 (D.D.C. 2012) (dismissing a *Bivens* claim "because plaintiff has stated no facts establishing [the defendant's] personal involvement in the alleged wrongdoing"); *Hurt v. Lappin*, 729 F. Supp. 2d 186, 190 (D.D.C. 2010) (dismissing a *Bivens* claim where there was no allegation of "individual actions that might have violated [the plaintiff's] rights").   Plaintiffs fail to allege individual actions by the *Bivens* defendants in violation of the Constitution in Counts Nine and Ten, which therefore should be dismissed.

A.    **The amended complaint does not establish that any of the *Bivens* defendants, through their own individual actions, violated the Fourth Amendment**

In setting forth their Fourth Amendment claim based on an alleged unlawful search of their email account, *see* Am. Compl. ¶¶ 181-88, plaintiffs do not allege any individual actions by former Deputy Director Joyce, former Special Agent in Charge Ibison, or Special Agent Malone.   Instead plaintiffs refer to unnamed "governmental agents" or simply just "the government":

> 65.    Upon information and belief, ***government agents*** accessed, collected, and maintained records on a multitude of the Kelleys' personal emails including, but not limited to, other "Tampa Angel" emails, and emails between the Kelleys and Director Petraeus, General Allen, and Agent Humphries.

66.    Upon information and belief, the additional emails ***the government agents*** seized, searched, reviewed and maintained were not pertinent to unearthing evidence related to the case involving the Kelleys' cyber stalker or any other criminal investigation, nor could any reasonable person believe they could have been. Rather, ***the government*** searched, obtained, and reviewed personal, irrelevant private emails belonging to the Kelleys.

67.    Upon information and belief, ***government agents*** misused the emails obtained through overbroad search and seizure to conduct a scurrilous investigation into Mrs. Kelley's private life that had no bearing on any legitimate concern to the FBI.

Am. Compl. ¶¶ 65-67 (emphases added).   Those paragraphs – made only upon information and belief – do not plausibly allege that any of the *Bivens* defendants personally engaged in any unconstitutional search of stored email communications.   *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiffs' other allegations made specifically in support of Count Nine also fail to allege email searches by Joyce, Ibison, and Malone.   *See* Am. Compl. ¶¶ 181-88.   Plaintiffs' Fourth Amendment claim is based on the contention that, "[u]pon information and belief, Defendants accessed, searched and seized the Kelleys' emails beyond the scope for which the government had probable cause or proper judicial approval to search."   *See id*. ¶ 182.   But that assertion is based on the conduct of "Defendants," which includes the agency defendants, such as the FBI, as well as the ten unnamed John and Jane Doe defendants.   That general statement fails to identify personal action by any *Bivens* defendant, and it does not demonstrate to any degree of plausibility that any *Bivens* defendant personally engaged in any email searching related to the plaintiffs.   *See Iqbal*, 556 U.S. at 679.   Nor are there allegations in the remainder of the amended complaint that identify individual actions taken by the *Bivens* defendants in relation to plaintiffs' Fourth Amendment claim.

**1.    The allegations relating specifically to Sean Joyce fail to set forth a claim on which relief can be granted**

The amended complaint makes no mention of Sean Joyce, a former Deputy Director of the FBI, having personal involvement in searching any of plaintiffs' email accounts.   Rather, plaintiffs identify former Deputy Director Joyce in the amended complaint as a defendant, *see* Am. Compl. ¶ 2, and as a Deputy Director of the FBI and a resident of Virginia, *see id.* ¶ 25; and allege further that he directed FBI agents in Tampa "to treat the Kelleys' case differently than other investigations," *id.* ¶ 62; directed the course of the investigation, including preempting decisions about the case made in Tampa, and instructing FBI agents not to interview Paula Broadwell, *see id.*; that he made decisions as to whether to inform the President about the cyberstalking investigation, *see id.* ¶ 78; and that he was on a list of persons having access to the cyberstalking case file, *see id.* ¶ 90.[4]   The amended complaint contains no other allegations regarding his specific conduct and fails to allege that former Deputy Director Joyce was personally involved in any search of plaintiffs' emails.

**2.    The allegations relating specifically to Steven Ibison fail to set forth a claim on which relief can be granted**

Plaintiffs' Fourth Amendment *Bivens* claim against former Special Agent in Charge Steven Ibison is similarly deficient – there are no allegations of his personal involvement in any email searches.   To the contrary, the amended complaint contains only four sets of allegations regarding Ibison:   he is identified as a defendant, *see* Am. Compl. ¶ 2; he is identified as a former FBI Special Agent and a resident of Florida, *see id.* ¶ 27; he is alleged to have confronted FBI agent Fred Humphries regarding Humphries's relationship and communications with Jill Kelley,

---

[4]   By recounting these allegations, the *Bivens* defendants do not endorse their legitimacy (the same is true of the allegations regarding Ibison and Malone).

*see id.* ¶ 74; and he is alleged to have been on a list of persons having access to the cyberstalking case file, *see id.* ¶ 90.   Those sparse allegations do not so much as hint that former Special Agent in Charge Ibison personally acted to conduct a search of stored email communications in violation of plaintiffs' putative Fourth Amendment rights and therefore fail to "state a claim to relief that is plausible on its face."   *Iqbal*, 556 U.S. at 678 (quotation omitted).

> **3.      The allegations relating specifically to Adam Malone fail to set forth a claim on which relief can be granted**

The amended complaint likewise fails to attribute any unconstitutional email searches to Special Agent Adam Malone.   While Agent Malone is mentioned several times in the amended complaint, none of those references plausibly suggests that he illegally searched any stored email communications.   Instead, the allegations in the amended complaint identify Agent Malone in the following respects:   as a defendant, *see* Am. Compl. ¶ 2; as an FBI agent residing in Florida, *see id.* ¶ 28; as being responsible for taking reports from the Kelleys regarding cyberstalking, *see id.* ¶¶ 44, 53; as promising the Kelleys that their privacy would be respected and their names not disclosed, *see id.* ¶¶ 45, 54; as meeting with Jill Kelley at the Tampa FBI office to determine the anonymous sender of the complained of emails, *see id.* ¶ 46; as asking Jill Kelley for access to other emails in her account, *see id.* ¶ 50; as reporting to Jill Kelley that the FBI had identified the sender of the anonymous emails, but not providing any details about the sender, *see id.* ¶¶ 54, 71; as arriving at Jill Kelley's residence to ask her questions, *see id.* ¶ 69; as refusing to answer Jill Kelley's questions about her safety, *see id.* ¶¶ 54, 71; as speaking with Scott Kelley on or about December 3, 2012, about the decision not to prosecute the Paula Broadwell, *see id.* ¶ 88; as stating that information provided to the press about the Kelleys came from FBI headquarters, *see id.*; and finally, as being on a list of persons having access to the cyberstalking case file, *see id.* ¶ 90. None of these allegations demonstrates that Special Agent Malone personally searched any email

communications beyond the consent that Jill Kelley provided, let alone without a warrant or beyond the scope of a duly issued warrant.   Consequently, plaintiffs fail to state a Fourth Amendment claim against Special Agent Malone.

> ### B.      The amended complaint does not allege the personal involvement of the *Bivens* defendants in any form of gender discrimination

Plaintiffs fail to state a Fifth Amendment *Bivens* claim against Sean Joyce, Steven Ibison, and Adam Malone because the amended complaint does not allege that the *Bivens* defendants – through their individual actions – discriminated against Jill Kelley based on gender.

To set forth a cognizable gender discrimination claim under the Fifth Amendment, two analytical standards are used:   one for gender-based classifications, and a second for gender-based discriminatory treatment.   Plaintiffs' claims are inadequate under either standard. For gender-based classifications, such as those made by a governmental entity, intermediate scrutiny applies.   *See Califano v. Webster*, 430 U.S 313, 316-17 (1977) (evaluating a gender-based benefits formula under intermediate scrutiny).   To withstand such intermediate scrutiny, "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."   *Craig v. Boren*, 429 U.S. 190, 197 (1976).   Where a claim rests instead on individual discriminatory treatment based on gender, the D.C. Circuit has recently adopted and applied the test articulated in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977), which is a test initially formulated in the context of race discrimination, but which has broadened in its application.   *See Roberts v. United States*, -- F.3d --, 2014 WL 259661, at *7, *9 (D.C. Cir. Jan. 24, 2014); *see also In re Naval Chaplaincy*, 738 F.3d 425, 429 (D.C. Cir. 2013) (applying the *Arlington Heights* test to equal protection claims based on religious discrimination).   Under the *Arlington Heights* standard, a claim of discriminatory treatment requires proof of "discriminatory intent or purpose

. . . to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265; *see also Roberts*, -- F.3d --, 2014 WL 259661, at *7.   Thus, to state an individual claim for discriminatory treatment based on gender, a plaintiff must allege that an "invidious discriminatory purpose was a motivating factor." *Arlington Heights*, 429 U.S. at 266.

Here, the amended complaint contains no allegations of gender-based classifications.   For instance, it does not allege that the *Bivens* defendants had a practice of investigating cyberstalking differently based on gender.   Nor does the amended complaint allege that any of the three *Bivens* defendants made any gender-based classification of Jill Kelley.

The amended complaint also does not contain any allegations sufficient to sustain a claim against any of the *Bivens* defendants for discriminatory treatment based on gender.   Plaintiffs do assert that Sean Joyce, while Deputy Director of the FBI, instructed FBI agents "to treat the Kelleys' case differently than other investigations."   Am. Compl. ¶ 62.   But that allegation is insufficient because it does not state that gender was the basis for the differential treatment.   *See id.*   Nor could it plausibly do so since in paragraph 62 plaintiffs refer not to 'Jill Kelley's case,' but rather to "the Kelleys' case," meaning that it was the case of both Jill and Scott Kelley – making gender discrimination unsupportable.   The other allegations mentioning Sean Joyce likewise do not suggest that he discriminated against Jill Kelley based on gender.   *See id.* ¶¶ 2, 25, 78, 90.   Without sufficiently pleading any facts to that effect, plaintiffs fail to state a gender discrimination claim against Sean Joyce.

The four references in the amended complaint to Steven Ibison similarly fail to support a claim that he discriminated against Jill Kelley based on gender, *see id.* ¶¶ 2, 27, 74, 90, which requires that he be dismissed from Count Ten.

The allegations regarding Adam Malone identify several interactions that he allegedly had with Jill Kelley over time, but none of those indicate that he treated her differently based on gender.  *See id.* ¶¶ 2, 28, 44, 46, 50, 53, 54, 69, 71, 88, 90.   For instance, the amended complaint states that after the FBI identified the sender of the anonymous emails, Adam Malone did not provide any details about the sender to Jill Kelley.   *See id.* ¶¶ 54, 71.   However, there is no hint that Special Agent Malone's actions were made on the basis of gender.   The same is true regarding the allegation that agent Malone refused to answer Jill Kelley's questions about her safety – there is no assertion that Malone's actions were the result of Jill Kelley's gender.   *See id.* In sum, the amended complaint fails to identify any discriminatory action taken due to Jill Kelley's gender, and claims against the *Bivens* defendants should be dismissed.

Plaintiffs also fail to plausibly allege that the *Bivens* defendants were motivated by an "invidious discriminatory purpose."  *Arlington Heights*, 429 U.S. at 266.   The amended complaint does allege that "[d]efendants acted with purpose and intent to discriminate against Mrs. Kelley on the basis of sex."   Am. Compl. ¶ 193.   However, that allegation is inadequate for two reasons.   First, it references "defendants" and not the specific conduct of Sean Joyce, Steven Ibison, or Adam Malone.   Second, that statement is nothing more than "a naked assertion" and "a formulaic recitation of the elements of a cause of action."   *Twombly*, 550 U.S. at 555, 557.   The Supreme Court has made clear, in the context of a *Bivens* case no less, that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."   *Iqbal*, 556 U.S. at 679.   Furthermore, when an element of a complaint requires proof of a discriminatory state of mind, the complaint must contain factual allegations "sufficient to plausibly suggest [the individual defendants'] discriminatory state of mind."   *Id.* at 683.   Yet as explained above, the amended complaint fails to aver "factual content that allows the court to

draw the reasonable inference" that Sean Joyce, Steven Ibison, or Adam Malone were motivated by invidious gender discrimination at any time.   *Iqbal*, 556 U.S. at 678.

In sum, the amended complaint fails to demonstrate that the individually-named *Bivens* defendants personally engaged in any violation of the Fifth Amendment.   For that reason, Count Ten should be dismissed.

### C.   The claim for the denial of victims' assistance in Count Ten is implausible and should be dismissed

As part of Count Ten, plaintiffs claim that Jill Kelley was denied victims' assistance due to gender discrimination.   This allegation is implausible on its face and should be dismissed. Plaintiffs' amended complaint repeatedly alleges that they were both victims of potential cyberstalking.   *See* Am. Compl. ¶ 3 (alleging that "[t]here is no question that Mrs. Kelley *and Dr. Scott Kelley* were the victims of and witnesses to a potential cyberstalking crime") (emphasis added); *id.* ¶ 63 (alleging that "*[t]he Kelleys' case* was also treated differently because they were not assigned a victims' assistance coordinator or provided with status updates regarding their case") (emphasis added); *id.* ¶ 79 (describing *Scott Kelley* as "a key witness, *victim* and recipient of the threats") (emphasis added); *id.* ¶ 92 (alleging that "*[t]he Kelleys* were not treated like the victims they were) (emphasis added).   Despite those allegations that *both* Kelleys were victims and that *both* Kelleys did not receive victims' assistance that they desired, plaintiffs claim that the denial of victims' assistance was based on gender discrimination.   *See id.* ¶ 190.   Such an allegation does not state a plausible claim for gender discrimination – both Jill and Scott Kelley claim to be cyberstalking victims, and they both received the same treatment with respect to victims' assistance.   *See id.* ¶¶ 3, 63, 79.   Accordingly, in addition to the grounds presented above (that the amended complaint fails to plausibly allege discriminatory actions personally

undertaken by the *Bivens* defendants), the amended complaint fails to state a claim for gender

discrimination in violation of the Fifth Amendment for this reason as well.

## II.   PLAINTIFFS' *BIVENS* CLAIMS ARE PRECLUDED AS A MATTER OF LAW

In addition to the above grounds, plaintiffs' *Bivens* claims are precluded as a matter of law.

A *Bivens* remedy is "not an automatic entitlement no matter what other means there may be to

vindicate a protected interest, and in most instances [the Supreme Court has] found a *Bivens*

remedy unjustified."   *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).   Moreover, whether a

*Bivens* remedy is permitted in a particular context is controlled by two considerations.   First, as

the Supreme Court explained in creating the *Bivens* action, that remedy is not available where

there is an "explicit congressional declaration that persons injured by a federal officer's [violation

of a constitutional right] may not recover money damages from the agents, but must instead be

remitted to another remedy, equally effective in the view of Congress."   *Bivens v. Six Unknown*

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *see also Bush v. Lucas*,

462 U.S. 367, 377-78 (1983) (explaining that no *Bivens* remedy is appropriate when there is a

"congressional determination foreclosing the damages claim").   Second, no *Bivens* remedy

should be recognized in the presence of "special factors counseling hesitation in the absence of

affirmative action by Congress."   *Bivens*, 403 U.S. at 396.

The special factors inquiry is not related to "the merits of the particular remedy, but 'to the

question of who should decide whether such a remedy should be provided.'"   *Sanchez-Espinoza*

*v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985) (quoting *Bush v. Lucas*, 462 U.S. at 378).   One

special factor counseling hesitation occurs when "Congress has provided what it considers

adequate remedial mechanisms for constitutional violations," and in that instance the Supreme

Court has "not created additional *Bivens* remedies."   *Schweiker v. Chilicky*, 487 U.S. 412, 423

(1988).   Accordingly, the D.C. Circuit has made clear that "courts will not imply a *Bivens* remedy

where Congress has adopted a 'comprehensive remedial scheme.'"   *Billington*, 681 F.3d at 381

(quoting *Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008)); *Spagnola v. Mathis*, 859 F.2d 223,

226 (D.C. Cir. 1988) (en banc) (per curiam).   The Supreme Court has emphasized that "Congress

is in a better position to decide whether or not the public interest would be served by creating [a

new substantive legal liability]."   *Bush*, 462 U.S. at 390; *see also Corr. Servs. Corp. v. Malesko*,

534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock

principles of separation of powers foreclose[] judicial imposition of a new substantive liability.").

Those limitations on the scope of the *Bivens* remedy apply here to bar plaintiffs' constitutional

claims.

**A.     No *Bivens* action should be inferred for Count Nine**

Count Nine is premised on the notion that government agents unreasonably searched the

contents of stored email communications without a warrant in violation of the Fourth Amendment,

*see* Am. Compl. ¶¶ 181-88, and thus fails for two related reasons.   First, the Stored

Communications Act provides a comprehensive remedial scheme for claims that the federal

government illegally searched the contents of email messages.   Second, the Stored

Communications Act precludes all other remedies.   *See* 18 U.S.C. §§ 2703, 2712(d).

The remedial scheme provided by the Stored Communications Act is a special factor

counseling against the creation of a *Bivens* remedy for Count Nine.   The Stored Communications

Act provides a means of redressing improper governmental searches of electronic

communications.   If the federal government searches electronic communications without

obtaining a warrant or other requisite process, it can be liable for money damages under the Stored

Communications Act.   *See generally* 18 U.S.C. §§ 2703, 2712.   Such an allegation lies at the

heart of Count Nine – in which plaintiffs contend that the government searched email without a

warrant or beyond the terms of a warrant.   *See* Am Compl. ¶¶ 181-88.   This then is precisely such

a case in which the courts should "not imply a *Bivens* remedy where Congress has adopted a 'comprehensive remedial scheme'" to redress injury of the sort complained of by plaintiffs. *Billington*, 681 F.3d at 381 (citation omitted).

Relatedly, Congress may preclude a *Bivens* remedy by statute.   In *Hui v. Castaneda*, 559 U.S. 799 (2010), the Supreme Court declined to infer a *Bivens* action where a statute provided that the FTCA was the exclusive remedy for damages arising from a federal employee's misconduct.   *See id.* at 802, 812-13 (holding that the exclusive remedy provision in 42 U.S.C. § 233(a) shields individual federal employees from *Bivens* suits); *accord Gonzalez v. Holder*, 763 F. Supp. 2d 145, 151 (D.D.C. 2011).   Courts have similarly concluded that other statutes with exclusive remedy provisions preclude *Bivens* actions against federal employees.   *See, e.g., Ingram v. Faruque*, 728 F.3d 1239, 1246 (10th Cir. 2013) (holding that the exclusive remedy provision of the Veterans Affairs Immunity Statute, 38 U.S.C. § 7316(a)(1), precludes *Bivens* lawsuits); *M.E.S., Inc. v. Snell*, 712 F.3d 666, 672 (2d Cir. 2013) (holding that no *Bivens* remedy exists under the Contract Disputes Act, 41 U.S.C. §§ 7101-09, because the exclusive remedy is a claim against the United States).

A review of the plain language of the Stored Communications Act similarly suggests that Congress precluded a *Bivens* remedy for illegal searches of stored electronic communications.   In enacting the Stored Communications Act, Congress provided a remedy against the United States for wrongfully obtaining "the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system," 18 U.S.C. § 2703(a), or for wrongfully obtaining the contents of electronic communications stored in a remote computing service, *see id.* § 2703(b).   That remedy permits "any person who is aggrieved by any willful violation of this chapter" to commence an action against the United States to recover money damages.   *See id.*

16

§ 2712(a).   The money damages permitted consist of "actual damages, but not less than $10,000, whichever amount is greater . . ." and "litigation costs, reasonably incurred."   *See id.* § 2712(a)(1)-(2).   In creating that remedy, notably, Congress also excluded all other relief for claims based on governmental searches of electronic communications by declaring that remedy in the Stored Communications Act to be the exclusive avenue of redress:   "Any action against the United States under this subsection shall be the exclusive remedy against the United States for any claims within the purview of this section."   *Id.* § 2712(d).   As was the case in *Hui*, the remedy provided by the Stored Communications Act is the exclusive remedy provided for violations by the federal government, and no *Bivens* action should be implied here against individual federal officers for personally-paid damages.   *See Hui*, 559 U.S. at 802, 812-13.

**B.      No *Bivens* remedy should be inferred for Count Ten**

Count Ten claims that Jill Kelley was the victim of gender discrimination in the course of the FBI's investigation of plaintiffs' report of potential cyberstalking.   *See* Am. Compl. ¶¶ 189-97.   Her alleged injuries can be grouped into two categories:   (i) allegations that she (and Scott Kelley) did not receive victim assistance in connection with their cyberstalking report; and (ii) allegations that their complaint was investigated unfairly and that Jill Kelley was portrayed unfairly in the media by the FBI.   A *Bivens* remedy cannot be inferred in either context.

**1.      A *Bivens* remedy has not been previously created in the contexts of the claims such as those in Count Ten, and it should not be inferred here**

The applicability of the *Bivens* remedy is narrow, with the Supreme Court permitting *Bivens* actions in three limited contexts.   The original *Bivens* action was inferred in the context of an unreasonable search and seizure in violation of the Fourth Amendment.   *See Bivens*, 403 U.S. at 397.   Subsequently, the Supreme Court has recognized *Bivens* actions in only two additional settings:   claims of gender discrimination in employment under the Fifth Amendment's Due

Process Clause, and claims of cruel and unusual punishment by prison officials under the Eighth

Amendment.   *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980);

*see also Billington*, 681 F.3d at 381 (identifying the three instances in which the Supreme Court

has recognized a *Bivens* remedy); *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012) (same);

*Klay v. Panetta*, 924 F. Supp. 2d 8, 12 n.1 (D.D.C. 2013) (same).   In the forty-plus years since

those decisions, the Supreme Court has not authorized any expansion of the "limited holding" in

*Bivens*, and has instead "consistently refused to extend *Bivens* liability *to any new context* or new

category of defendants."   *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 68 (2001) (emphasis

added); *see also Minneci v. Pollard*, 132 S. Ct. 617, 622-23, 626 (2012) (refusing to extend the

scope of the *Bivens* remedy and recounting five other instances since *Carlson* in which the

Supreme Court declined to extend the remedy as well); *Iqbal*, 556 U.S. at 675 (explaining that,

"[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens*

liability 'to any new context or new category of defendants'" (quoting *Malesko*, 534 U.S. at 66));

*Schweiker*, 487 U.S. at 421 ("Our more recent decisions have responded cautiously to suggestions

that *Bivens* remedies be extended *into new contexts*." (emphasis added)).   As summarized by the

D.C. Circuit, "[t]he Supreme Court consistently has considered and rejected *Bivens* remedies in all

other contexts."   *Doe v. Rumsfeld*, 683 F.3d at 394; *see also Ali v. Rumsfeld*, 649 F.3d 762, 774

(D.C. Cir. 2011) (rejecting the creation of a *Bivens* action under the Fifth and Eighth Amendments

in a new context on special factors grounds); *Arar v. Ashcroft*, 585 F.3d 559, 580 (2d Cir. 2009)

(refusing to extend the *Bivens* remedy for Fifth Amendment violations to the context of

extraordinary rendition proceedings).

      Here plaintiffs seek to extend *Bivens* in novel ways that would have wide-ranging effects.

They attempt to hold individual government employees responsible for (i) allegedly failing to

provide victims' assistance to both Jill Kelley and her husband, and (ii) for not defending Jill

Kelley in the press, in purported contrast to the government's alleged defense of General Allen in

the press.   *See* Am. Compl. ¶¶ 190-91.   The first claim is far removed from the context of gender

discrimination in employment, and it implicates a wide range of law enforcement concerns in areas

in which Congress has previously legislated.   *See, e.g.,* Crime Victims' Protection Act

Pub. L. No. 108-405, Tit. I, 118 Stat. 2260 (2004); Victims' Rights and Restitution Act,

Pub. L. No. 101-647, Tit. V, 104 Stat. 4789 (1990).   Due to its different context (including the

factual distinction that both Jill *and Scott* Kelley claim that they were denied victims' assistance)

as well as the presence of congressional legislation in the area, there is no reason to fashion a

*Bivens* remedy in the context of the provision or denial of victims' assistance based on gender.

Similarly, there is no reason to expand *Bivens* to the context where a governmental actor does not

publicly defend a person in the press allegedly based on gender.   Statements to the press by

executive agencies have long enjoyed heightened protections, including absolute immunity at

times, due in part to their inherently discretionary nature.   *See Barr v. Matteo*, 360 U.S. 564

(1959); *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 292-94

(D.C. Cir. 1977).   To create a damages remedy based on an allegation that an individual federal

employee did not try to or was not successful in ensuring balanced media coverage based on

gender is far removed from any context in which the Supreme Court has permitted a *Bivens* action,

and for that reason, no such action should be inferred here.

> ### 2.      Plaintiffs' claims of the denial of victims' assistance should not be recognized through a *Bivens* remedy

Additional grounds require the dismissal of Jill Kelley's Fifth Amendment claim based on

the FBI's alleged denial of victims' assistance when conducting its investigation of her

cyberstalking report.   The federal government's obligations with respect to potential crime

victims emanate from two different statutes, the Crime Victims' Protection Act (the "CVPA") and the Victims' Rights and Restitution Act (the "VRRA").   Both Acts strongly counsel against the judicial creation of a separate damages remedy.   *See Bush*, 462 U.S. at 390 ("Congress is in a better position to decide whether or not the public interest would be served by creating [a new substantive legal liability]."); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability.").

In the Crime Victims' Protection Act, Congress expressly precluded a damages remedy, stating that "[n]othing in this chapter shall be construed to authorize a cause of action for damages . . . ."   18 U.S.C. § 3771(d)(6).   Consistent with Congress's intent, the Attorney General's Guidelines for Victim and Witness Assistance, renounce any intention to permit the inference of a damages remedy with respect to the provision of victims' assistance.   *See Attorney General Guidelines for Victim and Witness Assistance* 53 (2011) (available at http://www.justice.gov/olp/pdf/ag_guidelines2012.pdf) (providing that the guidelines "are not intended to, do not, and should not be relied upon to create any procedural or substantive rights or to establish procedural or substantive standards of conduct or care enforceable at law in any matter, civil or criminal").[5]

---

[5] Nor is it plausible that plaintiffs had any right to victims' assistance under the CVPA because those rights apply only after the commencement of court proceedings involving an offense against a crime victim.   *See* 18 U.S.C. § 3771(b) ("In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a)."); *see also* The Availability of Crime Victims' Rights under the Crime Victims' Rights Act of 2004, 2010 WL 6743535 at *1 (Dec. 17, 2010) (explaining that "the CVRA is best read as providing that the rights identified in section 3771(a) are guaranteed from the time that the criminal proceedings are initiated (by complaint, information or indictment) and cease to be available if all charges are dismissed either voluntarily or on the merits (or if the Government declines to bring formal charges after the filing of a complaint)").

The Victims' Rights and Restitution Act provides for additional victims assistance, but it too disclaims any intention of permitting damage claims for a violation of its terms.   The VRRA prohibits gender discrimination in the administration of the victims' assistance programs, making the inference of a constitutional claim unnecessary.   *See* 42 U.S.C. § 10604(e).   And the VRRA also expressly rejects the inference of any cause of action "arising out of the failure of a responsible person to provide information as required by subsection (b) or (c) of this section."   *Id.* § 10607(d).   Thus, the VRRA is a context in which Congress considered the potential for discrimination, and deliberately decided not to create a specific remedy.

As noted above, the special factors inquiry is not related to "the merits of the particular remedy, but 'to the question of who should decide whether such a remedy should be provided.'" *Sanchez-Espinoza*, 770 F.2d at 208 (quoting *Bush*, 462 U.S. at 378).   It is compelling in this case that Congress has determined not to permit damage claims to be brought for the alleged wrongful denial of victims' assistance.   In addition to the other factors stated above, these special factors require the dismissal the victims' assistance prong of plaintiffs' Fifth Amendment *Bivens* claim.

## III.   THE DOCTRINE OF QUALIFIED IMMUNITY SHIELDS THE *BIVENS* DEFENDANTS FROM PLAINTIFFS' CONSTITUTIONAL CLAIMS

The defense of qualified immunity is available to defendants who have been sued in their individual capacities for *Bivens* claims.   As its name suggests, qualified immunity provides "*immunity from suit* rather than a mere defense to liability."   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Providing governmental officers with qualified immunity serves important policy objectives, by reducing "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."   *Anderson*, 483 U.S. at 638. Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity . . . at the earliest possible stage in litigation."   *Hunter v. Bryant*, 502 U.S. 224, 227

(1991) (per curiam); *see also Anderson*, 483 U.S. at 646 n.6 (emphasizing that "qualified immunity questions should be resolved at the earliest possible stage of a litigation"); *Armbruster v. Frost*, -- F. Supp. 2d --, 2013 WL 4505272, at *5 (D.D.C. Aug. 26, 2013) (explaining that since qualified immunity "exists to shield government officials who act lawfully from the rigors of suit, it should be granted or denied as early as the factual record allows").

Qualified immunity protects governmental officials when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Federal officials sued in *Bivens* actions are entitled to qualified immunity when either (i) the plaintiff has not established that the individual defendant violated a constitutional right, or (ii) the asserted constitutional right was not "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Bame v. Dillard*, 637 F.3d 380, 384, (D.C. Cir. 2011); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004); *Williamson v. Cox*, 952 F. Supp. 2d 176, 180 (D.D.C. 2013).[6]

The second inquiry – whether the constitutional right is clearly established – "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). The Supreme Court has explained that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

---

[6]  As determined by the Supreme Court, these two qualified-immunity considerations may be considered in either order. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009), overruling in part *Saucier*, 533 U.S. 194.

that right." *Anderson*, 483 U.S. at 640.   Also, where courts disagree on the existence of a

constitutional right, that right is not clearly established, and qualified immunity shields the

governmental official from suit.   *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges . . .

disagree on a constitutional question, it is unfair to subject police to money damages for picking

the losing side of the controversy."); *Bame*, 637 F.3d at 388.   Put simply, to constitute a clearly

established constitutional right, "existing precedent must have placed the . . . constitutional

question *beyond debate*."   *al-Kidd*, 131 S. Ct. at 2083 (emphasis added).

By way of further perspective, the protections afforded by qualified immunity are broad,

and they extend to "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) (internal quotation marks and citation omitted); *see

also Reiver v. District of Columbia*, 925 F. Supp. 2d 1, 6 (D.D.C. 2013).   The reason for such

broad protection is to give "government officials breathing room to make reasonable but mistaken

judgments about open legal questions."   *al-Kidd*, 131 S. Ct. at 2085.

> **A.  Defendants are entitled to qualified immunity against plaintiffs' Fourth
> Amendment claim asserted in Count Nine because plaintiffs do not have a
> clearly established expectation of privacy in stored electronic
> communications, such as remotely stored emails**

The Supreme Court has made clear that "[t]he general proposition . . . that an unreasonable

search or seizure violates the Fourth Amendment is of little help in determining whether the

violative nature of the particular conduct is clearly established."   *al-Kidd*, 131 S. Ct. at 2084.

Rather, the inquiry turns to an examination of the case law, and "an officer conducting a search is

entitled to qualified immunity where clearly established case law does not show that the search

violated the Fourth Amendment."   *Pearson*, 555 U.S. at 243-44.   Consistent with that directive,

qualified immunity should be afforded to an individual-capacity defendant where "the Fourth

Amendment right he [was] accused of violating was not clearly established at the time of any

violation." *Johnson v. Gov't of the Dist. of Columbia*, 734 F.3d 1194, 1204 (D.C. Cir. 2013).

Here, plaintiffs seek to vindicate a putative right to be free from government searches of

email communications sent through, or stored with, a third-party provider.   Regardless of whether

that specific right exists, it is certainly not clearly established.   Most fundamentally, the Supreme

Court has not addressed whether email communications sent through, and stored with, a third party

receive Fourth Amendment protections.   However, the Supreme Court has previously held that

the Fourth Amendment's protections do not extend to information that has been voluntarily

conveyed to third parties.   *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *United States v.*

*Miller*, 425 U.S. 435, 442 (1976).   And modern email is communicated through that process –

emails are sent through third parties (internet service providers), and often third parties (email

providers or internet service providers) store the contents of the emails remotely.   Thus, under the

third-party doctrine as articulated by the Supreme Court in *Smith* and *Miller*, it is not clearly

established that emails, which are transmitted to, and stored by, third parties, are within the ambit

of the Fourth Amendment's protections.

Nor are the rights of email users clearly established.   The D.C. Circuit has not spoken on

this issue, and other federal courts have reached differing results.   *See Pearson*, 555 U.S. at 245 (a

constitutional right is not clearly established when the circuits are split on the question); *Wilson v.*

*Layne*, 526 U.S. at 617 (same).   The Sixth Circuit has found that the Fourth Amendment protects

stored email communications, *see United States v. Warshak*, 631 F.3d 266, 284-86 (6th Cir. 2010),

while the Eleventh Circuit has concluded that any such right is not clearly established.   *See*

*Rehberg v. Paulk*, 611 F.3d 828, 847 (11th Cir. 2010) (granting qualified immunity with respect to

a challenged email search because there was no clearly established constitutional right and

explaining that "[n]o Supreme Court decision and no precedential decision of this Circuit defines privacy rights in email content voluntarily transmitted over the global Internet and stored at a third-party ISP").

As these authorities demonstrate, the application of the Fourth Amendment to searches of stored electronic communications is not "beyond debate." *al-Kidd*, 131 S. Ct. at 2083.   As a result, plaintiffs have no clearly established Fourth Amendment right to privacy in the contents of email communications.   Where there is legitimate disagreement regarding the validity of the rights asserted, qualified immunity is appropriate.   *See Stanton v. Sims*, 134 S. Ct. 3, 7 (2013) (per curiam) (reversing, through summary disposition on the merits, a holding that a warrantless, hot-pursuit search constituted a clearly established violation of the Fourth Amendment because the issue was not beyond debate).   That result is consistent with the Supreme Court's admonition to proceed cautiously and slowly in delineating the extent of constitutional protections on topics such as electronic communications.   *See City of Ontario, Calif. v. Quon*, 560 U.S. 746, 759 (2010) ("The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear.").   Due to the present uncertainty in the law in regard to the reasonable expectation of privacy in emails sent and stored by third-parties, the *Bivens* defendants are entitled to qualified immunity for Count Nine.

**B.     Qualified immunity should be granted with respect to Count Ten because there is not a clearly established Fifth Amendment right to victims' assistance or gender-balanced media reporting**

In Count Ten, plaintiffs sue for gender discrimination under the Fifth Amendment for the FBI's investigation of their cyberstalking report.   On this count as well, the *Bivens* defendants merit qualified immunity because no constitutional violation is clearly established in this context. As explained above, plaintiffs sue on the basis of gender discrimination for allegedly not receiving certain forms of victims' assistance before a criminal proceeding was commenced.   But it is not

clearly established that an alleged gender-based denial of victims' assistance constitutes a deprivation of a constitutionally-protected right – and more basically, as explained above, plaintiffs' own allegations aver that both Jill and Scott Kelley were denied victims' assistance. *See* Am. Compl. ¶¶ 3, 63, 79, 92.   Similarly, there is no clearly established constitutional obligation requiring individual federal employees to ensure protect persons in the press from gender discrimination.

Nor does case law support plaintiffs' claims at even a higher level of generality – there is no clearly established Fifth Amendment right to be free from discriminatory investigations. Although courts have held that equal protection prevents selective *prosecutions*, *see United States v. Armstrong*, 517 U.S. 456, 464 (1996), there is no precedent extending that rule to *investigations*. And no court has suggested a constitutional right to be protected by the government in the press, much less one that guarantees gender equality in press coverage.   Put simply, there is no allegation that any individual *Bivens* defendant violated any clearly established constitutional right regarding Count Ten, and qualified immunity is therefore appropriate.

## CONCLUSION

For the foregoing reasons, the *Bivens* defendants should be dismissed from this case.

February 28, 2014                                  Respectfully Submitted,

                                                  STUART F. DELERY
                                                  Assistant Attorney General

                                                  JOHN R. TYLER
                                                  Assistant Branch Director


                                                    /s/   *Peter J. Phipps*
                                                  PETER J. PHIPPS (DC Bar #502904)
                                                  Senior Trial Counsel
                                                  U.S. Department of Justice, Civil Division
                                                  Federal Programs Branch

Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov

<u>Mailing Address:</u>
P.O. Box 883 Ben Franklin Station
Washington, DC 20044

<u>Courier Address:</u>
20 Massachusetts Ave., NW
Washington, DC 20001

*Attorneys for Defendants*