# Exhibit 1
Subpoena to Jeh Charles Johnson
(June 4, 2015)

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

GILBERTE JILL KELLEY ET AL.,
*Plaintiff*
v.
THE FEDERAL BUREAU OF INVESTIGATION, ET AL.
*Defendant*

Civil Action No. 13-cv-825 (ABJ)

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Jeh Charles Johnson

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Sidley Austin LLP<br>1501 K Street NW<br>Washington, DC 20005 | Date and Time:<br>06/19/2015 9:00 am |
|---|---|

The deposition will be recorded by this method: Videotaped and Recorded Stenographically

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: All documents and materials, whether electronic or hard copy, in your possession that relate to the Privacy Act litigation brought by Jill and Scott Kelley against the FBI and Department of Defense, including but not limited to those categories of documents and materials described in the Schedule attached hereto

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/04/2015

*CLERK OF COURT*

OR

/s/ Alan Charles Raul

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Jill and Scott Kelley , who issues or requests this subpoena, are:

Alan Charles Raul, Sidley Austin LLP,1501 K St. NW, Washington, DC 20005; araul@sidley.com; (202) 736-8477

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 13-cv-825 (ABJ)

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* __________ .

❐ I served the subpoena by delivering a copy to the named individual as follows: ______________________

______________________ on *(date)* __________ ; or

❐ I returned the subpoena unexecuted because: ______________________
______________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ __________ .

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: __________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Schedule of Documents to Be Produced**

Documents (the term "Documents" shall include all documents, electronically stored information and things within the scope of Fed. R. Civ. P. 34) in your ("you" and "your" shall include Jeh C. Johnson, his agents, employees, and all persons acting at his direction or on his behalf) custody, possession or control to be produced pursuant to this subpoena include, but are not limited to:

1. All Documents concerning, referencing, or related to Jill and/or Scott Kelley ("the Kelleys"), including documents created in response to or as a result of the cyberstalking report filed by the Kelleys in the Tampa, Florida FBI Field Office in June 2012 ("Kelley Cyberstalking Report"), and all Documents evidencing, constituting, referencing, or otherwise related to any investigation or inquiry of or about the Kelleys, and/or the Kelleys' relationship, interactions, or communications with General (Ret.) David Petraeus or General (Ret.) John Allen, or Paula Broadwell.

2. All copies of Documents concerning, referencing, or related to the Kelleys that your created or caused to be created.

3. All phone and electronic communication records or logs or other Documents from January 1, 2012, to the present, constituting or evidencing all communications relating to the Kelleys or the Kelley Cyberstalking Report, including, but not limited to, any investigation or inquiry regarding, related to, or involving the Kelleys, Paula Broadwell, General (Ret.) David Petraeus, General (Ret.) John Allen, and/or the allegations raised in the Kelleys' Amended Complaint or other subjects of this action (collectively, the "Relevant Issues"). Without limiting the foregoing, Documents within the scope of this subpoena include your phone, visitor, and communications logs, as well as communications relating to the Relevant Issues with former

Secretary of Defense Leon Panetta; Jeremy Bash, former Chief of Staff to then-Secretary Panetta; George Little, former Assistant to the Secretary of Defense for Public Affairs and Pentagon Press Secretary; and Assistant Secretary of Defense for Public Affairs Douglas B. Wilson.

    4.    All Documents evidencing communications concerning the Kelleys, Paula Broadwell, or the Kelley Cyberstalking Report, with, to, or from (a) media reporters or personnel, or the news organizations for which those personnel worked, (b) any employee of or person working in or on behalf of the White House or Executive Office of the President, or on behalf of any official therein, or (c) any other person employed outside of the Department of Defense or the FBI, from May 1, 2012 to August 1, 2013, relating to the Relevant Issues, including all communications or Documents evidencing communications between you (Jeh Johnson) and Howard Altman, author of "Feds won't revisit socialite Kelley's emails," Tampa Tribune Online, July 3, 2013.

    5.    All communications or Documents evidencing communications between you (Jeh Johnson) and Howard Altman, author of "Feds won't revisit socialite Kelley's emails," Tampa Tribune Online, July 3, 2013.

    6.    All Documents relating to sharing, obtaining, acquiring, sending, receiving, or any other kind of transfer of investigative materials, Documents, records, or communications regarding the Kelleys, Relevant Issues, or resulting from the Kelley Cyberstalking Report, including, but not limited to, Documents evidencing the chain of custody, disclosure, and the rationale or justification for any disclosure or transfer of any such materials, records, or information.

    7.    All Documents relating to the flight from Hawaii to Australia on November 12-

13, 2012, during which Secretary of Defense Leon Panetta was reported by the New York Times to have disclosed the Kelleys' name to the media, including any flight logs or records of passengers, and any briefings presented prior to or during that flight.

8. All Documents that may explain or relate how reporters on the flight from Hawaii to Australia on November 12-13, 2012, with then-Secretary of Defense Leon Panetta learned of the Kelley's.

9. All Documents reflecting statements of purpose, motivation, or strategy, related in any way to the press release and press briefing issued on board Secretary Leon Panetta's flight from Hawaii to Australia on November 12-13, 2012, regarding General (Ret.) David Petraeus, Paula Broadwell, and/or the Kelleys, and/or any of the topics raised in the Kelley's First Amended Complaint in this action (*Jill Kelley et al. v. FBI et al.*, D.D.C. Civ. Action No. 13-825 (ABJ)).

10. All Documents concerning, referencing, or related to the Kelleys.

11. All Documents concerning, referencing, or related to Paula Broadwell.

12. All Documents that refer to either or both of the Kelleys, including all subpoenas, warrants, affidavits, or other Documents submitted or used or issued to obtain any documents mentioning either of the Kelleys and/or any other email accounts accessed for purposes related to or arising out of the Kelley Cyberstalking Report.

13. All Documents, regardless of date, concerning investigations or disciplinary actions taken against any against you or any federal employee for failing to comply with policies, procedures, rules, laws, or regulations relating to the disclosure of or failure to safeguard Documents that may bear on the Relevant Issues.

14. All Documents describing, discussing, or otherwise providing any identifying information about records or systems of records that mention or refer to either or both of the Kelleys.

15. All Documents discussed by you (Jeh Johnson) in Howard Altman's article, "Feds won't revisit socialite Kelley's emails," Tampa Tribune Online, July 3, 2013, *available at* http://tbo.com/list/military-news/feds-wont-revisit-socialite-kelleys-emails-20130703/, including, but not limited to:

- The "pages of email traffic" referenced in the statement: "The former Pentagon general counsel who pored over 25,000 pages of email traffic between now-retired Marine Gen. John Allen and Tampa socialite Jill Kelley before turning them over to the Inspector General says there is no reason to reopen an investigation into those electronic exchanges."

- The "emails" referenced in the statement: "Johnson said that the FBI told him the emails between Kelley and Allen were not germane to Kelleys' complaint but might be of interest to the Department of Defense because 'of a potentially inappropriate relationship involving a military officer' who at the time was commanding U.S. troops in Afghanistan."

- The subpoena or any other legal authority, order, or device issued to obtain such emails, as referenced in Johnson's statement, "My strong recollection is that the emails that were handed over to me by the FBI were the product of subpoena."

- The contents of the boxes referenced by the statement, "Johnson said he and another attorney pored over the emails, which were provided by the FBI in two large boxes."

16. All Documents discussed by Secretary Leon Panetta's aides in Eric Schmitt and Elisabeth Bumiller's article, "Another General is Tied to the Petraeus Inquiry," New York Times, November 13, 2012, *available at* http://www.nytimes.com/2012/11/14/us/top-us-commander-in-afghanistan-is-linked-to-petraeus-scandal.html?_r=0, including, but not limited to:

- The "documents" referenced in the statement: "Mr. Panetta, along with Gen. Martin E. Dempsey, the chairman of the Joint Chiefs of Staff, referred the Allen matter to the Pentagon's inspector general, according to Mr. Panetta's aides, after a team of military and civilian lawyers reviewed what defense officials say are thousands of pages of documents, including hundreds of e-mails between General Allen and Ms. Kelley, that the F.B.I. forwarded to the Pentagon."

- The "e-mails" referenced in the statement: "other Pentagon officials briefed on the content of the e-mails said that some of the language did, on initial reading, seem 'overly flirtatious' and warranted further inquiry."

- The "documents" referenced in the statement: "Officials familiar with the investigation said it covers 20,000 to 30,000 page[s] of documents, but Pentagon officials cautioned against making too much of that number, since some might be from e-mail chains, or brief messages printed out on a whole page."

- Any subpoena or other such mechanism issued to obtain such "documents" and "e-mails".

- The names and contact information of the aides who traveled with Mr. Panetta and gave the above-quoted statements.

- The names and contact information of the Pentagon officials who gave the above-quoted statements.

17. With reference to the article by Christina Ng, Martha Raddatz, and Luis Martinez's titled "Petraeus Affair: Who is Jill Kelley?" ABC News, November 13, 2012, *available at* http://news.yahoo.com/petraeus-affair-jill-kelley-154817861--abc-news-topstories.html, provide the following:

- All documents discussed by "a senior U.S. defense official" who traveled with Mr. Panetta, including, but not limited to:
    - The "emails" referenced in the statement: "The FBI has now uncovered 'potentially inappropriate' emails between Gen. Allen and Kelley, according to a senior U.S. defense official who is traveling with Defense Secretary Leon Panetta."
    - The "emails" referenced in the statement: "The U.S. official said the emails were 'innocuous' and mostly about upcoming dinner parties and seeing him on TV."
    - The "documents" referenced in the statement: "The department is reviewing between 20,000 and 30,000 documents connected to this matter, the official said."
    - Any subpoena or other such mechanism issued to obtain such emails and documents.
- Documents sufficient to show the name and contact information of the "senior defense official" who traveled with Mr. Panetta and gave the above-quoted statements.

18.  All Documents evidencing communications between you (Jeh Johnson) and FBI or DOD or any other government agency, employee, or persons concerning or relating to the Kelleys, the Kelley Cyberstalking Report, or any investigation thereof.

19.  All Documents evidencing the names of all individuals at the DOD who accessed and/or reviewed emails sent to or received by one or both of the Kelleys, or any other Documents relating to any FBI investigation of the Kelleys.

20.  All reports, recommendations, or other Documents evidencing the results of DOD's review of Documents containing the Kelleys' emails or other materials relating to the investigation of the Kelleys or any matter related to the Kelleys.

21.  All Documents, regardless of date, concerning investigations or personnel actions taken against you or any federal employee as a result of the Kelley Cyberstalking Report, the investigation of the Kelleys, or the disclosure of information alleged in the First Amended Complaint in this action (*Jill Kelley et. al. v. FBI et. al.*, D.D.C. Civ. Action No. 13825 (ABJ)).

# Exhibit 2

Email from A. Raul to Chambers
(June 12, 2015)

**From:** Raul, Alan Charles
**To:** ABJ_DCDecf@dcd.uscourts.gov; Brown, Colleen Theresa; McNicholas, Edward R.; Hemmersbaugh, Paul; Tyler, John (CIV); Marcus, Lisa (CIV); Phipps, Peter (CIV); Buckingham, Stephen (CIV)
**Cc:** Viglucci Lopez, Cara
**Subject:** RE: Kelley v. FBI 13-cv-0825: Discovery Teleconference
**Date:** Friday, June 12, 2015 4:14:03 PM

---

Dear Judge Jackson:

In accordance with direction from Chambers, following below is a list of key issues, facts, and information on which Mr. Johnson has unique, personal knowledge that cannot be obtained from another source, and as to which his testimony would be sought:

-- Mr. Johnson's own communications with reporters regarding the Kelleys, including without limitation, Mr. Johnson's communications with reporter Dan Klaidman that are partially reflected in Mr. Klaidman's November 11, 2012 email addressed to a personal email account, "General Counsel Jeh Johnson, <redacted>@gmail.com," which mentions Jill Kelley. See document produced by defendants, DoD0002545.

-- Mr. Johnson's responses and/or prior communications to or from Mr. Klaidman, who addressed him as "Jeh" and to whom it appears he subsequently granted an "exclusive" story about his nomination as DHS Secretary, see http://www.thedailybeast.com/articles/2013/10/17/exclusive-jeh-johnson-tapped-to-lead-department-of-homeland-security.html.

-- Mr. Johnson's use of personal email accounts to engage in communications about the Kelleys.

-- Mr. Johnson's non-privileged telephone calls, emails or in-person meetings involving discussion regarding the Kelleys.

-- Mr. Johnson's personal involvement as the "senior Defense official" or "senior military official" to whom leaks about the Kelleys were attributed in the following (partial) list of news articles: Report: Emails Triggered Petraeus Probe, Politico, Nov. 11, 2012, available at http://www.politico.com/news/stories/1112/83690.html#ixzz2UbQRzmpz; Jill Kelley ID'd as Woman Who Sparked Petraeus Inquiry, USA Today, Nov. 12, 2012, available at http://www.usatoday.com/story/news/nation/2012/11/11/petraeus-jill-kelley-scandal/1698203/; FBI probe of Petraeus triggered by e-mail threats from biographer, officials say, Wash. Post, Nov. 11, 2012, available at http://www.washingtonpost.com/world/national-security/fbi-probe-of-petraeus-triggered-by-e-mail-threats-from-biographer-officials-say/2012/11/10/d2fc52de-2b68-11e2-bab2-eda299503684_story.html

--- Mr. Johnson's discussion about the Kelleys with Howard Altman of the Tampa Tribune, as quoted or referenced in "Feds won't revisit socialite Kelley's emails," available at http://tbo.com/list/military-news/feds-wont-revisit-socialite-kelleys-emails-20130703/

--- Mr. Johnson's call(s) with the FBI on or about November 10 or 11, 2012, including any references regarding applicable Privacy Act protections to the Kelleys' files. (Mr. Johnson's call with the FBI is referenced in the above article reporting on Mr. Altman's interview with Mr. Johnson, but is not referenced in the Defense Department's interrogatory responses to Plaintiffs.)

-- Mr. Johnson's personal review of the Kelleys' emails, as referenced in the above article, including his comments that "he and another attorney pored over the emails," and that the emails were "very comprehensive and you could tell over a several year period that nothing was missing."

-- Mr. Johnson's reference to the Kelleys' privacy rights in his interview with Mr. Altman, as implied in the quote from the above article, "The Inspector General's office 'did a thorough investigation and reached the right results. To go beyond that would be a fishing expedition and invasion of privacy for both of them.'"

-- Mr. Johnson's personal compliance with the Privacy Act with regard to information concerning the Kelleys.

-- Mr. Johnson's knowledge of or discussions with any government official or private citizen on or before November 11, 2012 about or referencing the Kelleys.

All references to the Kelleys would pertain to either or both Jill Kelley or Dr Scott Kelley, by name or substance.

Respectfully submitted,

Alan Raul

ALAN CHARLES RAUL
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
+1.202.736.8477
+1.202.403.7068 (mobile)
araul@sidley.com
www.sidley.com/infolaw

Sidley Austin LLP - Law360 Privacy Group of the Year:
http://www.law360.com/articles/617475/privacy-group-of-the-year-sidley-austin

Privacy, Data Protection and Cybersecurity Law Review:
To download a free eBook or PDF version of the first edition please click:
http://thelawreviews.co.uk/download/edition/1097/the-privacy-data-protection-cybersecurity-law-review/
(all comments and suggestions for 2d edition welcome)

---

**From:** Dianne_Keppler@dcd.uscourts.gov on behalf of ABJ_DCDecf@dcd.uscourts.gov
**Sent:** Thursday, June 11, 2015 03:50:57 PM
**To:** Raul, Alan Charles; Brown, Colleen Theresa; McNicholas, Edward R.; Hemmersbaugh, Paul; john.tyler@usdoj.gov; lisa.marcus@usdoj.gov; peter.phipps@usdoj.gov; stephen.buckingham@usdoj.gov
**Subject:** Kelley v. FBI 13-cv-0825: Discovery Teleconference

Counsel:

Judge Jackson is available for a discovery teleconference in the Kelley v. FBI matter on Tuesday, June 16 at 3:00 p.m. She asks plaintiffs to provide by tomorrow a brief list or summary, without elaboration or argument, of the desired areas of testimony. Please provide that by replying to this email.

At the time of the call, counsel who are participating in the call should join together on a single conference line and call chambers at the number below. You will then be connected to Judge Jackson. Thank you.

Dianne Keppler
Career Law Clerk to the Honorable Amy Berman Jackson
United States District Court for the District of Columbia
(202) 354-3460

****************************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

****************************************************************************************************